Robert Allen GAINES, Petitioner,

v.

Joe S. HOPPER, Warden, Georgia State Prison, Respondent.

Civ. A. No. 76–19–Amer.

United States District Court,
M. D. Georgia,
Americus Division.

April 26, 1977.

Lawrence W. Roberts, Cordele, Ga., for petitioner.

Arthur K. Bolton, Atty. Gen., G. Steven Parker, Asst. Atty. Gen., Atlanta, Ga., for respondent.

OWENS, District Judge:

Petitioner Robert Allen Gaines was convicted of murder in the Sumter County Superior Court and sentenced to life imprisonment on October 9, 1973. His conviction having been affirmed on appeal, 232 Ga. 727, 208 S.E.2d 798 (1974), and habeas corpus relief having been denied by the Superior Court of Tattnall County, *Gaines v. Hopper,* Habeas Corpus No. 75–69 (Aug. 12, 1975) (Respondent's Exhibit 2), and appealed to the Supreme Court of Georgia, which denied him a certificate of probable cause to appeal, he has now filed this habeas corpus petition. His sole contention is that his conviction is constitutionally void because he was denied his constitutionally guaranteed right of effective assistance of counsel. Specifically, he complains that his court-appointed attorney conferred with him only ten minutes prior to trial, did not conduct a thorough preliminary investigation of the case, did not interview potential defense witnesses, and did not prepare petitioner to testify in his own behalf. The facts not having been thoroughly developed in the state court proceedings, this court held an evidentiary hearing at which time petitioner, his parents, and his trial counsel testified, following which both parties were invited to submit memoranda outlining their legal positions. Having carefully considered those legal arguments and the facts of this case, the court has concluded that petitioner was not afforded constitutionally acceptable representation and that, therefore, he is entitled to federal habeas corpus relief.

At Gaines' trial, two witnesses, Herschel Neely (R. 36)[1] and James Battle (R. 56), testified that they were conversing

1. The trial record appears as Exhibit 1 to the transcript of proceedings at the state habeas corpus hearing. The respondent has submitted the habeas record as its Exhibit 1 in this proceeding.

with one Samuel Merritt when Gaines came up to them, shouted "Why y'all want to do me like this here" (R. 35, 57), and shot Merritt in the chest with a handgun. Another witness, Eddie McGrady (R. 16) testified that upon hearing a shot he stepped out of his nearby office, saw Merritt fall, and heard a female voice exclaim, "That's the one that shot him."[2] (R. 17). McGrady approached the identified individual—Gaines—who fled from him when ordered to halt. McGrady followed the identified man and saw him run into the yard of one Clarence Smith. Smith then testified that Gaines had indeed appeared at his house and that Gaines had stayed there until the police arrived and arrested him. (R. 45). Smith testified further that a handgun was found on his premises shortly thereafter; that gun was later determined by the state's expert witness, Kelly M. Fite (R. 68), as the one which fired the bullet found in Merritt's body.[3] Various aspects of the state's case were corroborated by two police officers who investigated the case, Jerry Crawley and E. J. Hayes, and Dr. Fred Thompson, who testified as to the physical damage caused by the fatal bullet. In addition to these witnesses who testified, Larry B. Howard, Lucius Stewart, Mary Jane Oliver, Nathaniel Lyle, and Sarah Stafford were listed as witnesses for the state on the Grand Jury indictment, but were not called by either the state or defense. Gaines put up no evidence, and the judge charged the jury without objection.[4] Not surprisingly, the jury returned a guilty verdict.

Superficially, it appears that Gaines' trial counsel's participation in the trial at which the facts outlined above were developed

---

2. The unidentified woman was not produced as a witness, apparently because she was never located by the prosecution. (R. 18). The evidence was admitted over objection by defense counsel that it was hearsay on the ground that it was part of the res gestae. The Supreme Court of Georgia on direct appeal found no error in this evidentiary ruling. 232 Ga. at 730, 208 S.E.2d at 800. Petitioner does not seek relief on this ground and, in any event, given the overwhelming evidence on identification produced by the state, such an error would obviously be harmless and, therefore, a far cry from the prejudicial effect required before an erroneous evidentiary ruling constitutes an error of constitutional magnitude. *See Hills v. Henderson,* 529 F.2d 397 (5th Cir. 1976); *Smith v. Estelle,* 519 F.2d 1267 (5th Cir. 1975).

3. The chains of custody of the various physical evidence were properly established by various witnesses, including the investigating police officers, despite some objections made by defense counsel, and no objections to the propriety of that evidence are here asserted by the petitioner.

4. Several portions of the charge are constitutionally suspect. For example, the judge stated that "where there is direct evidence to show an intentional killing by the defendant the law presumes the homicide to be malicious unless the contrary appears from circumstances of alleviation, excuse, or justification, and *it is incumbent on the defendant to make out such circumstances to the satisfaction of the jury unless they appear from the evidence produced against him.*" (R. 78) (emphasis added). Such a charge arguably shifts the burden to the defendant to prove his innocence and, particular-

ly if the defendant raised issues of manslaughter or self-defense, might be so constitutionally intolerable as to void this conviction. *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) *cf. Smith v. Smith,* 454 F.2d 572 (5th Cir. 1971), *cert denied,* 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972). *But see United States ex rel. Castro v. Regan,* 525 F.2d 1157 (3d Cir. 1975). Here, however, the evidence presented by the prosecution did not suggest those issues and the defendant introduced no evidence. Another difficulty in the charge is that portion which explained that the jury is "to reconcile conflicts in the evidence in the testimony of witnesses, if there is any, so as to make all speak the truth." (R. 75). Elsewhere, the court charged "You are not bound or concluded by the testimony of any witness, expert or otherwise." (R. 76). Although such charges have been criticized in the federal courts, e. g., *United States v. Holland,* 5 Cir., 526 F.2d 284, *rev'd en banc,* 537 F.2d 821 (5th Cir. 1976), such a charge does not differ in import from the charge in *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) which was held to be not so erroneous as to have "by itself so infected the entire trial that the resulting conviction violates due process."

Petitioner has not raised any challenge to these jury instructions either in this court or in the state courts; however, his failure to exhaust those claims does not prohibit this court from reaching his properly exhausted claims on the merits. *Singleton v. Estelle,* 492 F.2d 671 (5th Cir. 1974); *Harris v. Estelle,* 487 F.2d 1293 (5th Cir. 1974).

was adequate. Contrary to petitioner's allegations, his attorney met with him in the county jail where he remained pending trial several times after his appointment at least two months prior to trial, advised him of his rights, and heard him tell his side of the incident. In preparation for the trial, he talked with law enforcement officers and the prosecuting attorney about the trial to the extent, he testified, that he knew the state's case well by the time the case was called for trial. At that time, he sought a last-minute continuance to attempt to secure witnesses suggested, he recalled, for the first time by his client and, when it was denied,[5] pursued his client's desire to have the witnesses testify by having subpoenas issued; however, the one witness who was found knew nothing about petitioner's case and the others could not be located. During the trial, counsel appropriately cross-examined the prosecution witnesses, sought to have various evidence excluded on arguably valid grounds, and told petitioner he could take the stand and give either sworn testimony or an unsworn statement. When Gaines told him that he did not want to do either, the attorney related, the defense rested without producing any evidence.

It is clear that Gaines' trial counsel had a relatively full understanding and awareness of the *state's* case. It is equally clear, however, that he had no such perception of his *client's* position and did not attempt to develop one. An examination of facts brought out in connection with post-trial and collateral attack proceedings reveals that a murder conviction was not as cut and dried as the evidence summarized above might suggest. On three occasions, petitioner—though consistently denying to his attorney that he had shot the victim Merritt and though asserting an alibi for which he could name no witnesses—told his attor-

ney that on the night in question he had been involved in several confrontations with the victim Merritt and/or the witnesses Neely and Battle. Though his story changed from one conference to another, at some point or another Gaines told his attorney that on the night in question he had been in an argument with Merritt at which time Merritt had displayed a shotgun; that he had been assaulted and robbed by Merritt and Neely and later again assaulted by Merritt; and that Merritt and Battle at one point threatened to kill him. Similar circumstances were described in affidavits of one Georgia Mae Jones (Habeas Record ["H.R."] 46, Exhibit 6), which was obtained by Gaines' present counsel, who replaced trial counsel immediately after the trial,[6] in connection with the filing of a motion for a new trial.[7] That affidavit corroborates petitioner's assertion that at some time that night Merritt had a gun and indicates further that Merritt may well have provoked the attack—in fact, if not in law—by insulting and obscene words. Furthermore, that affidavit states details of an altercation between Merritt and Neely on the one hand and Gaines on the other prior to the shooting—thus flatly contradicting Neely's testimony that he had not even seen Gaines that night prior to the shooting (R. 39) and that he had not assaulted Gaines (R. 39), and casting doubt on his testimony that the victim had used no profanity towards Gaines when he was shot. (R. 39).

Had the factual situation as suggested by the petitioner and the affidavit of Georgia Mae Jones been fully investigated and developed, a jury might well have been convinced that Gaines acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation," Ga.Code Ann. § 26–1102, which would have reduced the degree of his offense from

---

**5.** Gaines had no idea what, if anything, the suggested witnesses knew about his case.

**6.** This lawyer also represented Gaines on direct appeal.

**7.** Georgia Mae Jones apparently submitted two affidavits to the Sumter County Superior Court in connection with the motion for a new trial.

The first was obtained by petitioner's new attorney in support of the motion for a new trial. (H.R. 48). It is not in the record before this court. The second affidavit, which purports to be somewhat of a recantation of the first, was submitted by the prosecuting attorney in the state's response to the new trial motion, (H.R. 49, Exhibit 2), and is the affidavit on which the discussion in the text is based.

murder to manslaughter.[8] Less likely, but nevertheless plausible, a self-defense claim might have been believed. In any event, the importance to Gaines' case of full presentation of the events leading up to the killing of Merritt cannot seriously be disputed: rather than having the impression of a totally unprovoked shooting, the jury would have been aware, at the least, that some reason existed for the incident and, accordingly, might have returned a manslaughter rather than a murder verdict or conceivably, might have acquitted on the basis of a finding of self-defense.

Gaines' trial counsel did not present to the jury the factual situation suggested by the statements of Gaines and Georgia Mae Jones—so crucial to the defense—for two reasons. First, counsel correctly perceived the obvious fact that raising manslaughter and self-defense issues is not possible so long as the defendant denies doing the shooting; because Gaines consistently maintained that he had not shot Merritt, counsel abandoned those theories. Second, and more important, trial counsel was unaware of the possibilities because he had an inadequate knowledge of the totality of the facts surrounding the incident. Other than the law enforcement officers with whom he discussed the state's case, he did not interview any of the thirteen witnesses listed on the grand jury indictment. (H.R. 46). Furthermore, although counsel who filed Gaines' motion for a new trial uncovered Georgia Mae Jones and her important testimony, trial counsel was unaware of her knowledge until the new trial motion, including her affidavits, was filed. (H.R. 49, Exhibit 1, page 4).

Thus, however much trial counsel might have known about the *state's* case, he knew nothing more about his *client's* position than that which his client told him. This inadequacy arose from improper preparation: counsel would have had a proper understanding of his client's case if he had interviewed the known witnesses listed on the grand jury indictment instead of relying completely on the prosecuting attorney and law enforcement officers—who understandably are not going to investigate a case for the defense or from the defendant's viewpoint no matter what their obligations are to deliver exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The assistance of counsel guaranteed by the Constitution to all defendants in criminal proceedings is

> "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance."

*MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) (emphasis original). *Accord, Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974). The cornerstone for such constitutionally acceptable representation is a familiarity with the facts and law of the defendant's case. As stated in *Caraway v. Beto,* 421 F.2d 636, 637 (5th Cir. 1970) (citations omitted):

> "Certainly, an attorney cannot render reasonably effective assistance unless he has acquainted himself with the law and facts of the case. Our adversary system is designed to serve the ends of justice; it cannot do that unless accused's counsel presents an intelligent and knowledgeable defense. Such a defense requires investigation and preparation."

Indeed, without a basic knowledge of the defendant's situation, a lawyer is obviously in no better position than his unskilled lay client to present a defense, as the court in *Brooks v. Texas,* 381 F.2d 619, 624 (5th Cir. 1967) so appropriately observed:

> "Any experienced trial lawyer knows that a purported trial without adequate preparation amounts to no trial at all."

And, of course, the lawyer's thorough investigation of the case is particularly important where, as here, the client remains in custody pending his trial. These precepts are strikingly illustrated in this case: solidly arguable mitigating circumstances which

---

**8.** The court expresses no opinion on the burden of proof on the issue of manslaughter under Georgia law. *See* Mullaney v. Wilbur,, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

might well have had a substantial impact on the jury and the outcome of its deliberations were not presented.

▮ Trial counsel, who recognized the possibility of raising manslaughter or self-defense issues, attributes his decision not to pursue them to his client's steadfast denial that he shot the victim—a position totally inconsistent with either theory. To be sure, a lawyer cannot be faulted, nor is ineffective assistance of counsel established, if the lawyer follows his client's persistent directions in the prosecution of a case even though the lawyer in his best professional judgment believes that another course of action is preferable.[9] Similarly, a lawyer properly discharges his professional responsibility, and his representation meets constitutional standards, if he does not raise a defense which, after appropriate investigation and study, in his opinion has no legal or factual basis.[10] But such admittedly difficult decisions must be the product of informed professional judgment which can be rendered only after proper investigation; at a bare minimum, that investigation must

include interviewing known witnesses, whether suggested by the defendant or listed on the indictment.[11] As the American Bar Association *Standards for the Defense Function (App.Draft 1971)* advise in section 4.1 *(emphasis added):*

> "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. *The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty."* [12]

▮ Effective representation further requires that the lawyer discuss the results of his investigation with his client, explain the legal consequences of it, and consult with the client on possible approaches to the case so that the client has some reasonable understanding of his situation.[13] Although

---

**9.** *E. g., United States v. Bridgeman,* 173 U.S. App.D.C. 150, 523 F.2d 1099 (1975); *see Hudson v. Alabama,* 493 F.2d 171 (5th Cir. 1974) (Attorney stipulated facts pursuant to agreement with prosecutor with respect to a lesser sentence without consent of defendant held ineffective assistance of counsel despite lawyer's belief that course he followed was in defendant's best interest): *American Bar Association,* Standards for the Defense Function §§ 5.1, 5.2 (App.Draft 1971).

**10.** *See Cheely v. United States,* 535 F.2d 934 (5th Cir. 1976).

**11.** *E. g. West v. Louisiana,* 478 F.2d 1026, 1033 (5th Cir. 1973); *Gomez v. Beto,* 462 F.2d 596 (5th Cir. 1972); *Caraway v. Beto,* 421 F.2d 636 (5th Cir. 1970). Cases cited by the respondent for the proposition that the lawyer in this case need not have interviewed witnesses to have rendered effective assistance of counsel are not controlling. In *Mims v. Wainwright,* 403 F.Supp. 552 (M.D.Fla.1975), *aff'd,* 535 F.2d 657 (5 Cir., 1976) (table), it appears that an investigator working for the lawyer had investigated all the state's witnesses. *Id.* at 555 n. 8, and that the lawyer's refusal to interview the alibi witnesses which the defendant suggested was not improper because the defendant admitted his presence. Here, in contrast, Gaines' lawyer interviewed no witnesses and the key issue

about which further information was needed concerned the circumstances of the killing—a much more complex matter than whether or not the defendant was present at the scene. In *Pitts v. Hopper,* 402 F.Supp. 119 (N.D.Ga.1974), the court refused to find ineffective counsel who had not interviewed a state witness. In doing so, the court noted that "In Georgia there is no criminal discovery as such, and defendants have had little success in seeking to discover the State's case." *Id.* at 123. That observation cannot be made here—Gaines' lawyer could easily have begun with any one of the thirteen names appearing on the indictment.

**12.** Although these standards by their own limitation are not intended as "criteria for judicial evaluation of the effectiveness of counsel to determine the validity of a conviction," section 1.1(f), they are nevertheless relevant and they have been specifically approved by at least one federal appellate court. *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1203 (1973).

**13.** A defendant who pleads guilty is entitled to be advised by an attorney familiar with the facts and law of his case who discusses the case with him and explains the essential elements of the charged crime, the facts which must be shown to establish those elements, and

the client's directions cannot be ignored, it is nevertheless the skilled lawyer, not the lay client, who must plan and prepare the case in the exercise of his best professional judgment, and the lawyer must pursue the case in such a fashion until his client expressly and unequivocally dictates otherwise; uncritical acquiescence in the client's approach to the case is not acceptable, particularly when investigation would reveal that the client's position is hopeless and that there are more promising alternatives.

Gaines' trial counsel did not fully consider the possibilities of his client's case and could not have done so because he had not set about to learn the facts from witnesses. As a result, he was in no better position than his jailed client to evaluate the legal and factual realities of the case, especially Gaines' incredible denial of the shooting which was controverted by two eyewitnesses. After a thorough investigation, on the other hand, counsel would have been able to explore further with Gaines his assertions, explaining fully that other evidence contradicted his contentions and that the best defense might be to assert mitigating claims. If Gaines had continued to deny his involvement, counsel's investigation similarly would have enabled him to discuss with Gaines prior to trial the implications of that position; counsel could have

advised Gaines about testifying and prepared him to do so as effectively as possible. Instead, petitioner's counsel made no effort to assist his client by finding out what really happened other than by talking to the prosecuting attorney and law enforcement officials. Further, even with the knowledge presumably gained from them that eyewitness testimony in the state's case clearly identified petitioner as the one who shot the victim, he neither pursued the facts further nor discussed with his client the possible approaches that could be taken to the case.[14] As a consequence, Gaines was left with no defense. The Constitution demands more than this.

Gaines having been convicted in a trial at which he was denied his constitutional right to the effective assistance of counsel, he is being detained by the respondent in violation of the Constitution and, accordingly, his application for a writ of habeas corpus must be granted.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that petitioner's conviction be set aside and that petitioner within ninety (90) days after this judgment becomes final as a result of the failure of respondent to lodge an appeal or as the result of the issuance of a mandate affirming this decision, whichever is later, be reindicted and tried, failing which this

---

possible defenses. *E. g., Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Summers v. United States,* 538 F.2d 1208 (5th Cir. 1976); *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974). Certainly a defendant who exercises his right to a trial is entitled to no less consultation. Thus, in *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1203 (1973), the court stated:

"Counsel should discuss fully potential strategies and tactical choices with his client." *Accord, United States v. Moore,* 529 F.2d 355 (D.C.Cir. 1976); *see Coles v. Peyton,* 389 F.2d 224, 226–27 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968).

14. In *Howard v. Henderson,* 519 F.2d 1176 (5th Cir.), *cert. denied,* 423 U.S. 1036, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975), a defendant contended that his guilty plea to murder was invalid because his retained attorney had been ineffective in failing to investigate the case and in not discovering a witness whose testimony would

have established that the defendant acted in self-defense. The court upheld the conviction:

"Although [the defendant] claims he told his counsel that he was attacked, and gave names of witnesses who might have led him to [the self-defense witness] if he had actively investigated the case, none of the initial police reports or early proceedings give any indication that there might have been a self-defense claim."

*Id.* at 1177. The court further observed that the defendant had displayed no awareness of an attack when conferring with his counsel. The case is thus inapplicable here for two reasons. First, unlike Howard's counsel, trial counsel for Gaines was put on notice by his client that *some sort of fracas* between *him* and the victim occurred prior to the shooting. In addition, the requisite level of representation is significantly higher for court-appointed counsel who represents an indigent defendant at trial than for retained counsel who advises a client to plead guilty.

writ of habeas corpus without further order shall be made absolute and petitioner shall be released from custody.

SO ORDERED this 26th day of April, 1977.