Robert Allen GAINES,
Petitioner-Appellee,

v.

Joe S. HOPPER, Respondent-Appellant.

No. 77–2284.

United States Court of Appeals,
Fifth Circuit.

June 30, 1978.

Arthur K. Bolton, Atty. Gen., Robert S. Stubbs, II, Exec. Asst. Atty. Gen., Richard L. Chambers, First Asst. Atty. Gen., John C. Walden, Sr., G. Stephen Parker, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellant.

Lawrence W. Roberts, Cordele, Ga., for petitioner-appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

PER CURIAM:

Petitioner Robert Allen Gaines was convicted of murder in the Sumter County, Georgia, Superior Court on October 9, 1973 and sentenced to life imprisonment. After exhausting his state remedies, petitioner brought this habeas corpus petition in federal district court alleging, *inter alia*, that he was denied his constitutionally guaranteed right to effective assistance of counsel. Following an evidentiary hearing, the district court granted relief, finding that the failure of petitioner's appointed counsel to conduct an adequate pre-trial investigation deprived petitioner of constitutionally effective assistance of counsel. We affirm.

The facts of this case are comprehensively set forth in Judge Owens' careful and scholarly opinion, reported at 430 F.Supp. 1173 (M.D.Ga.1977). For present purposes, it is sufficient to note that at Gaines' trial for the murder of Samuel Merritt, the prosecution presented the jury with "the impression of a totally unprovoked shooting", *id.* at 1177, founded in large part on the testimony of eyewitnesses Neely and Battle. Petitioner's trial counsel cross-examined the prosecution witnesses, but called neither Gaines nor any other witness to the stand. Defense counsel rested his case without producing any evidence.

Judge Owens found that although "Gaines' trial counsel had a relatively full understanding and awareness of the *state's* case . . . he had no such perception of his *client's* position and did not attempt to develop one." *Id.* at 1176 (emphasis in original). The district court recognized that the petitioner had met with his attorney several times, had denied on each occasion that he had shot the victim, and had asserted an alibi for which he could name no witnesses. But more significant to the able district judge was the fact that the petitioner

told his attorney that on the night in question he had been involved in several confrontations with the victim Merritt and/or the witnesses Neely and Battle [;] . . . that . . . he had been in an argument with Merritt at which Merritt had displayed a shotgun; that he had been assaulted and robbed by Merritt and Neely and later again assaulted by Merritt; and that Merritt and Battle at one point threatened to kill him. *Id.*[1]

Trial counsel, while aware of this version of the events, limited his pre-trial investigation to discussions with the prosecuting attorney and law enforcement officers. Although the names of thirteen potential witnesses were listed on the grand jury indictment and counsel was aware that the shooting took place in front of a crowd, counsel

---

1. Gaines' account of these events prior to the shooting was substantially corroborated by an affidavit executed by Georgia Mae Jones, which was obtained by Gaines' present counsel subsequent to the trial. *Id.*

did not interview any of those persons named on the indictment[2] or conduct an independent search for witnesses.

Judge Owens found that

Had the factual situation as suggested by the petitioner and the affidavit of Georgia Mae Jones been fully investigated and developed, a jury might well have been convinced that Gaines acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation," Ga.Code Ann. § 26–1102, which would have reduced the degree of his offense from murder to manslaughter. Less likely, but nevertheless plausible, a self-defense claim might have been believed. In any event, the importance to Gaines' case of full presentation of the events leading up to the killing of Merritt cannot seriously be disputed: rather than having the impression of a totally unprovoked shooting, the jury would have been aware, at the least, that some reason existed for the incident and accordingly, might have returned a manslaughter rather than a murder verdict or conceivably, might have acquitted on the basis of a finding of self-defense.

*Id.* at 1176–77 (note omitted). This factual situation was not presented to the jury at least in part for the reason that "trial counsel was unaware of the possibilities because he had an inadequate knowledge of the totality of the facts surrounding the incident." *Id.* at 1177. The district judge found that "counsel would have had a proper understanding of his client's case if he had interviewed the known witnesses listed on the grand jury indictment instead of relying completely on the prosecuting attorney and law enforcement officers . . ." *Id.*

▌Judge Owens crystallized his careful analysis of this case in the following terms:

"Gaines' trial counsel did not fully consider the possibilities of his client's case and could not have done so because he had not set about to learn the facts from witnesses. As a result, he was in no better position than his jailed client to evaluate the legal and factual realities of the case, especially Gaines' incredible denial of the shooting which was controverted by two eyewitnesses. After a thorough investigation, on the other hand, counsel would have been able to explore further with Gaines his assertions, explaining fully that other evidence contradicted his contentions and that the best defense might be to assert mitigating claims. If Gaines had continued to deny his involvement, counsel's investigation similarly would have enabled him to discuss with Gaines prior to trial the implications of that position; counsel could have advised Gaines about testifying and prepared him to do so as effectively as possible. Instead, petitioner's counsel made no effort to assist his client by finding out what really happened other than by talking to the prosecuting attorney and law enforcement officials. Further, even with the knowledge presumably gained from them that eyewitness testimony in the state's case clearly identified petitioner as the one who shot the victim, he neither pursued the facts further nor discussed with his client the possible approaches that could be taken to the case. As a consequence, Gaines was left with no defense. The Constitution demands more than this.

*Id.* at 1179. The standard for constitutionally effective assistance of counsel in this circuit is

not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

*Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir. 1974), *quoting MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir. 1960), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). *Accord, Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir.) (en banc), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975). Informed evaluation of potential

---

**2.** Other than the law enforcement officials.

defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel. We agree with Judge Owens that in the circumstances of this case, trial counsel's failure to conduct an investigation adequate for the performance of these functions deprived petitioner of constitutionally effective assistance of counsel. Judge Owens' findings of fact are amply supported by the record and his application of the governing legal standard is correct. We affirm the grant of habeas relief on the basis of his fine opinion.

AFFIRMED.