564 So.2d 1339 (1990)
STATE of Mississippi
v.
George David TOKMAN.
No. 03-DP-201.
Supreme Court of Mississippi.
April 25, 1990.
Rehearing Denied August 22, 1990.
*1340 Mike C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellant.
Joshua J. Wiener, Brunini Grantham Grower & Hewes, Jackson, James C. McKay, Mitchell F. Dolin, Gaines Cleveland, Kenneth J. Diamond, Covington & Burling, Washington, D.C., for appellee.
En Banc.
BLASS, Justice, for the Court:

I.
George David Tokman was convicted of capital murder and sentenced to death in September 1981. The conviction and sentence were affirmed by this Court. Tokman v. State, 435 So.2d 664 (Miss. 1983), cert. denied, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). Following denial of certiorari by the U.S. Supreme Court, Tokman filed, with leave of this Court, a motion for post-conviction relief on the issue of ineffective assistance of counsel. Tokman v. State, 475 So.2d 457 (Miss. 1985); 482 So.2d 241 (Miss. 1986). An evidentiary hearing was held in the Circuit Court of Hinds County, Judge William Coleman presiding. Relief was denied as to the guilt phase of the trial but granted as to the sentence phase. The death sentence was vacated. The State appeals, contending that the trial court erred in finding counsel's conduct fell below reasonable standards and in finding that this conduct prejudiced Tokman. Tokman timely filed a motion to alter or amend the order as to the guilt phase of the trial. Miss.R.Civ.P. 59(e). This motion was denied on July 7, 1988. Tokman appeals this denial, raising four issues, only one of which is addressed here.
We find no error in these proceedings, and the circuit court's order denying post conviction relief as to the guilt phase is affirmed. The order vacating the death sentence is also affirmed, and we remand for a new sentencing hearing.

II.

A.
The facts of the crime itself are briefly summarized here, but are related in greater detail in Tokman v. State, 435 So.2d at 666.
George David Tokman., Michael Leatherwood, and Jerry Fuson travelled from Fort Polk, Louisiana, to Jackson, on August 22, 1980, to retrieve Fuson's automobile. They ran out of money, and decided to rob a taxicab driver. Before a cab arrived they decided to kill the driver so that he could not identify them. The first taxi called was driven by a young, large man. He appeared too big and strong, so the trio rejected his taxi and called another. This one was driven by an elderly man, Albert Taylor, the victim. They directed Taylor to a Jackson address, but stopped him before arrival. A rope was placed around the driver's neck and he was pulled into the back seat. Tokman then drove the cab to the rear of Meadowbrook Cinema. Fuson left to get his car. Tokman and Leatherwood remained in the cab with Taylor. Taylor was repeatedly struck in the head and eventually killed. The record shows that Tokman struck him in the head with a knife, but the autopsy showed no stab wounds. The two men left the cab but returned to retrieve things they had forgotten. At this time Tokman struck Taylor again. At some point Tokman's hand was cut. Taylor was robbed of approximately $11.50, a pistol, his wallet, two money bags, and a set of keys. His body was found shortly after midnight on August 24, 1980.

B.
Counsel, Russell Moore, III, now deceased, was appointed by the court to represent Tokman. He met with Tokman several months before trial and received background information. Moore described Tokman as cooperative and responsive to questions. Counsel sought, unsuccessfully, a *1341 plea bargain agreement with the District Attorney's office. He learned that Jerry Fuson was to testify against Tokman, but did not interview Fuson or any other state witnesses before trial. Tokman's mother was contacted just as the trial was starting but declined to assist in his defense, saying that she was not well and that she was going through a difficult divorce. She was the only person, other than David Tokman, with whom counsel discussed Tokman's background. No other family members or community acquaintances were approached.
Counsel planned to have Tokman testify during the sentencing phase, but finally did not put him on when Tokman told counsel that he (Tokman) would ask for death. No search for mitigating evidence was conducted, other than the talk with the mother. Counsel stated that failure to investigate and to conduct any independent psychiatric examination of Tokman was due to a lack of funds, not strategic considerations.[1]
At the trial, defense counsel considered the testimony of the victim's twin brother as inflammatory, but did not object because he felt an objection would be unsuccessful. Other objections were not made for the same reason.
The total time spent personally, by appointed counsel, in preparation for trial was six hours, fifty minutes, three hours of which involved drafting pre-trial motions.
Approximately one week before trial, Robert H. Taylor, Jr. was brought in by appointed counsel to aid the defense. He stated that most of the factual investigation had been completed prior to his entry into the case. Taylor described Tokman as very mild mannered and cooperative, with a "death wish".
One day before the sentencing phase of Tokman's trial, Taylor met with Tokman and discussed his testimony. Initially Tokman agreed to ask for mercy, but on the morning of trial, he told counsel he would ask for the death penalty, preferring death to life imprisonment. The decision not to put Tokman on the stand was made by Taylor and Moore in light of the above, and because they felt Tokman would be a difficult witness to control. Taylor felt that "no person of David's age is, in the ultimate sense, competent to make a decision of the magnitude that David insisted upon making."
At the sentencing phase, Taylor suggested calling a clergyman as a witness, but Moore did not agree. Taylor stated that the failure to present mitigating evidence was not based on strategic considerations, with the exception of defendant's testimony. Tokman did not provide any useful information which might be converted into, or lead to mitigating evidence, despite repeated questioning.
Defense counsel was unaware that an order had been entered providing that Tokman be subjected to a battery of psychological tests. The tests were never given, nor was any protest made about it. The defense strategy, as described by Taylor, was to persist in the plea of not guilty and hope that the state would make some mistake.

III.
In reviewing a trial judge's decision our standard of review is clear. This "heavily fact-laden inquiry" should not be set aside absent a determination that the trial judge's finding was clearly erroneous. Merritt v. State, 517 So.2d 517, 520 (Miss. 1987); Anderson v. Bessemer City, 470 U.S. 564, 572, 105 S.Ct. 1504, 1510, 84 L.Ed.2d 518, 527 (1985).
The petitioner, seeking to overturn his conviction or sentence on grounds of ineffective assistance of counsel, must demonstrate factual proof by a preponderance of the evidence of an identifiable lapse by counsel and of some actual adverse impact on the fairness of the trial resulting from that lapse. Leatherwood v. State, 539 So.2d 1378, 1381 (Miss. 1989); Miss. Code Ann., § 99-39-23(7) (Supp. 1988).
*1342 The trial judge must review the claim of ineffective assistance of counsel in light of the two-prong test, stated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by this Court in Stringer v. State, 454 So.2d 468 (Miss. 1984).
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. (emphasis added)
466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; 454 So.2d at 477.

IV.

DID THE TRIAL COURT ERR IN FINDING THAT COUNSEL'S CONDUCT FELL BELOW REASONABLE STANDARDS AND IN FINDING THAT TOKMAN WAS IN FACT PREJUDICED BY THE LAPSE?

A.
In the lower court's "Opinion and Order", Judge Coleman notes that no testimony was presented in mitigation and extenuation during the penalty phase of the trial. He also notes that trial counsel had planned to rely entirely on Tokman's testimony in extenuation, then elected not to place Tokman on the stand, when he indicated that he would ask for the death penalty. While acknowledging that there was a serious conflict in the evidence of Tokman's psychological and psychiatric condition, Judge Coleman concludes that with timely investigation, mitigation evidence could have been obtained and offered during the penalty phase which would have presented Tokman to the jury as a person other than the cold-blooded, callous murderer portrayed by the State.
The failure by Tokman's counsel to conduct any investigation at all can be characterized as an "identifiable lapse". Cabello v. State, 524 So.2d 313 (Miss. 1988); Daniels v. Maggio, 669 F.2d 1075 (5th Cir.1982). At a minimum, counsel has a duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case. Ferguson v. State, 507 So.2d 94, 96 (Miss. 1987). It is critical that mitigating evidence be presented at capital sentencing proceedings. Leatherwood v. State, 473 So.2d 964, 970 (Miss. 1985).
In Ferguson,[2] appointed counsel conducted no independent investigation of the facts surrounding Ferguson's burglary arrest. He relied almost exclusively on material furnished to him by the state during discovery. Counsel interviewed the defendant only twice, when he was appointed and on the day of trial. Ferguson was not informed that he was being tried as an habitual offender. In determining that counsel's performance was deficient within the meaning of the Strickland doctrine, the court noted:
While it is true that courts are deferential to lawyers' judgments in such matters, there are limits. It has been held that "at a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case." Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir.1985).
507 So.2d at 96.
The State contends that the claims presented in this case fall within what the *1343 Supreme Court referred to as "sound trial strategy" in Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 695-96; see also Gomez v. Beto, 462 F.2d 596 (5th Cir.1972); Gaines v. Hopper, 575 F.2d 1147 (5th Cir.1978); and Solomon v. Kemp, 735 F.2d 395 (11th Cir.1984).
Although the State cites Gomez, Gaines, and Solomon for the proposition that tactical decisions by counsel should not be characterized as ineffective assistance of counsel, a careful reading of those cases indicates that a common thread of the fabric of the reviewing courts' deference to tactical considerations is thorough investigation. In the case under consideration here, Tokman's attorneys readily admit that they conducted little or no investigation into Tokman's background. In addition, little time was spent with the accused to explain the need for names of possible witnesses.
In Gaines, the Fifth Circuit affirmed the district court's grant of habeas relief on a finding that petitioner's appointed counsel failed to conduct an adequate pre-trial investigation. In affirming, the appeals court noted that trial counsel did not fully consider the possibilities of his client's case and could not have done so because he had not set about to learn the facts from witnesses, stating:
Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel.
575 F.2d at 1150.
We view the lapse by Tokman's attorneys in the context of the nature and seriousness of the charges and the potential penalty. Washington v. Watkins, 655 F.2d 1346, 1356-57 (5th Cir.1981). The determination of whether defendant received reasonably effective assistance is predicated on the entire record and the totality of the circumstances surrounding the trial performance. Daniels, 669 F.2d at 1077.
Tokman faced a potential death penalty. As noted by defense counsel, Tokman was immature and had a "death wish". Defense counsel failed to conduct any investigation at all in a search for mitigation evidence. Judge Coleman was not manifestly in error in concluding that trial counsel's performance, on balance and in the context of the entire case, was inadequate.

B.
The State argues that the trial court failed to find that "absent the error, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death," citing Evans v. State, 485 So.2d 276 (Miss. 1986); Mitchell v. Kemp, 762 F.2d 886, 888 (11th Cir.1985); Messer v. Kemp, 760 F.2d 1080 (11th Cir.1985); Ricalday v. Procunier, 736 F.2d 203 (5th Cir.1984); King v. Strickland, 748 F.2d 1462 (11th Cir.1984). The State contends that the trial court did not find that there was a reasonable probability that the balance of aggravating and mitigating factors would have been different and a life sentence returned, had defense presented any mitigating factors. It bolsters its argument by pointing out that there is no constitutional mandate that any mitigating character evidence be presented during the sentencing phase of a capital murder trial, citing Mitchell v. Kemp. The State also argues that the decision to present character witnesses is a judgment call, in that unfavorable character evidence may also be established on cross examination of these witnesses, citing Burger v. Kemp, 753 F.2d 930, 973 (11th Cir.1985); Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982); Williams v. Maggio, 679 F.2d 381 (5th Cir.1982).
Psychiatric and psychological evidence is crucial to the defense of a capital murder case. Ake v. Oklahoma, 470 U.S. 68, 80, 105 S.Ct. 1087, 1094, 84 L.Ed.2d 53 (1985). Fifth Circuit case law makes it particularly clear that there is a critical interrelation between expert psychiatric assistance and minimally effective representation. See Beavers v. Balkcom, 636 F.2d 114, 116 (5th Cir.1981); Wilson v. Butler, 813 F.2d 664, 672 (5th Cir.1987); Greer v. Beto, 379 F.2d 923, 925 (5th Cir.1967); Gray v. Lucas, 677 F.2d 1086, 1095 (5th Cir.1982).
In Mitchell, 762 F.2d at 889-90, the Court noted that an informed evaluation of *1344 potential defenses to criminal charges and meaningful discussion with the client of the realities of the case are cornerstones of effective assistance of counsel. Although a capital defendant's desire not to use character witnesses does not negate the duty to investigate, it limits the scope of the investigation required. In Messer, 760 F.2d at 1091, the Court noted that counsel's decision not to present character witnesses was based on a thorough investigation of Messer's background. Counsel was familiar with the mitigating evidence available and had interviewed possible witnesses, who were reluctant to testify on Messer's behalf.
The Eleventh Circuit in King concluded that counsel's failure to present available character witnesses in mitigation and his weak closing argument constituted both an unreasonable professional performance and impermissible prejudice to King. Counsel had no discussion with King concerning King's background and failed to carefully search for mitigating evidence, leading the appeals court to conclude that counsel's failure to present mitigating evidence was not a strategic decision taken after reasonable investigation. Tokman's counsel did not investigate the defendant's background, nor did they hold meaningful discussions with Tokman. Counsel could not have made an informed decision concerning mitigating evidence, as they had not conducted a proper investigation. There was no basis by which to limit the scope of the investigation required.
Leatherwood v. State, 473 So.2d 964 (Miss. 1985), was the appeal of a motion to vacate or set aside the judgment and sentence of capital murder, pursuant to Mississippi's Post-Conviction Collateral Relief Act, subsequent to the affirmance of Leatherwood's conviction and sentence of death, Leatherwood v. State, 435 So.2d 645 (Miss. 1983). Petitioner's allegation of ineffective assistance included a claim that defense counsel failed to investigate and present available psychological evidence that he was not antisocial or psychopathic, but emotionally immature and dependent, and easily led. In finding that Leatherwood had raised sufficient allegations to call into question the effectiveness of his counsel during the sentencing phase, this court noted that because defense strategy was to assert that Leatherwood was under the domination of Tokman, it was unreasonable for counsel not to pursue psychological evidence in support of that defense. While stating that a reviewing court is deferential to strategic decisions, the court noted that defense counsel failed to follow through on the chosen strategy. 473 So.2d at 970.
Tokman's attorneys in this post conviction action have presented evidence that Tokman was immature, dependent and easily led. Just as in Leatherwood's case, counsel for Tokman were unreasonable in not pursuing psychological evidence in support of the defense that Tokman was under Leatherwood's domination. Judge Coleman's Opinion and Order recognizes the fact that there is a serious conflict in the testimony of experts as to Tokman's psychological and psychiatric profile. Trial counsel discussed Tokman with Dr. Don Guild, the state psychiatrist, who described Tokman as the most culpable and hardened of the three accused murderers, and the least remorseful. There was a distinct possibility that unfavorable testimony, some of which is contained in the hearing transcript, would have been developed by the state during the trial. However, the very existence of the dispute in an area as subjective as an evaluation of an individual's personality traits and socialization, lends support to Tokman's argument that a thorough investigation and aggressive defense effort at the trial itself were essential. The cases cited and discussed above recognize that an aggressive defense necessarily entails thorough investigation.
Judge Coleman's findings are amply supported by the evidence in that: trial counsel spent negligible time interviewing the defendant and preparing a defense; trial counsel made no effort to contact or interview any potential character witnesses, other than Tokman's mother; the mother was contacted only after the trial had commenced; and finally, the lack of preparation left defense counsel unable to blunt *1345 the prosecution's forceful case. Judge Coleman explicitly held that counsel was not deficient in not contacting the father or sister, pursuant to Tokman's instructions, but was deficient in failing to investigate the defendant's background in a more timely and conscientious manner. Judge Coleman felt, and we agree, that earlier and more persistent contact with Tokman's family and acquaintances may have led to the discovery of some of the testimony produced by counsel in the post-conviction petition to set aside the judgment.
The circuit court's Opinion and Order of May 5, 1988, states in pertinent part:
The ultimate issue for this Court is an awesome one. This Court must make a judgment of fact on the professional performance of highly respected counsel and if found to be deficient, the weight that a jury would have placed on the evidence that was omitted by counsel's deficiency to determine if Petitioner was deprived of a fair trial.
.....
This Court finds by a preponderance of the evidence that counsel's performance in preparing for the trial, ..., did not adequately and timely counsel with Petitioner in obtaining mitigating evidence of Petitioner's life history... . Much of the testimony presented at the subject hearing would have presented the Petitioner to the jury for its consideration of a person other than that portrayed by the State as a cold-blooded, callous murderer.
It is this Court's opinion that the failure to investigate was so serious as to deprive the Petitioner of a fair trial on the sentencing phase.
Implicit in this opinion is a determination by the court that there was a reasonable probability that the balance of aggravating and mitigating factors would have been different, and a life sentence returned, had defense presented any mitigating factors. See Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss. 1985); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947).
Judge Coleman was aware of and applied the Strickland test, finding that counsel's conduct was deficient and that this deprived Tokman of a fair trial. These findings are not clearly erroneous.

V.
To prevail in his appeal of Judge Coleman's denial of relief as to the guilt phase of the trial, Tokman must show deficient performance and that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Strickland, 466 U.S. at 688, 104 S.Ct. at 2064-65, 80 L.Ed.2d at 693 (1984); Stringer, 454 So.2d at 477; Cabello v. State, 524 So.2d 313 (Miss. 1988); Daniels v. Maggio, 669 F.2d 1075 (5th Cir.1983); Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981).
The lower court found no "identifiable lapse" by counsel during the guilt phase. The record shows that counsel adequately investigated, filing discovery motions and obtaining the State's entire file. Thus the first prong of the Strickland test was not met. Even assuming for this argument there had been a lapse, we can see no reasonable probability that the outcome of the trial, as to guilt, would have been different had evidence been presented that Leatherwood, not Tokman, delivered the fatal injuries. Whether or not Tokman delivered the death blows, it was clearly established that he was present at the planning and execution of the murder; therefore, he was a principal. Miss. Code Ann. § 97-1-3 (1972); Fairchild v. State, 459 So.2d 793 (Miss. 1984).
Under the second prong of the Strickland test, Tokman must show that had counsel's performance been more adequate, there would have been a reasonable chance for a not guilty verdict. This has not been, and probably could not be, shown. Judge Coleman's finding that Tokman's counsel was not ineffective at the guilt phase of the *1346 trial is supported by the evidence and is affirmed.
AFFIRMED AND REMANDED FOR A NEW SENTENCING HEARING.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
DAN LEE, P.J., and PITTMAN, J., not participating.
NOTES
[1] The court ordered a complete psychiatric and psychological work up on Tokman. It was never carried out, although there was a brief examination.
[2] Despite the finding that counsel's performance was deficient, the court determined that the second prong of the Strickland test was not met, but ultimately remanded for a new trial due to counsel's denunciation of Ferguson as a liar in open court.