609 A.2d 1140 (1992)
David F. BREWER, Appellant,
v.
UNITED STATES, Appellee.
No. 91-CO-363.
District of Columbia Court of Appeals.
Argued June 2, 1992.
Decided July 10, 1992.
*1141 Richard K. Gilbert, Washington, D.C., appointed by the court, for appellant.
Eric L. Yaffe, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Gregory E. Jackson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.
Before FERREN, SCHWELB and KING, Associate Judges.
SCHWELB, Associate Judge:
Brewer was convicted by a jury of rape and of several related offenses, all committed against a woman who, according to Brewer, was a prostitute. This court affirmed his conviction. Brewer v. United States, 559 A.2d 317 (D.C.1989) (Brewer I). Brewer then filed a motion for a new trial pursuant to D.C.Code § 23-110 (1989). He contended that his trial counsel was constitutionally ineffective.
The judge who presided over Brewer's trial having died, the case was assigned to a different judge, who held an evidentiary hearing at which Brewer and his trial counsel were among the witnesses. On March 28, 1991, the judge issued a written opinion in which he denied the motion, holding that Brewer had failed to prove either deficient performance or prejudice. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Brewer now appeals from the denial of collateral relief. We affirm.

I
The substance of Brewer's claim of ineffectiveness is that, after the trial judge denied his motion in limine for leave to introduce evidence that the complainant had a reputation as a prostitute and had engaged in sex for money with persons other than himself, his trial counsel failed to revisit with him a prior decision, concededly agreed to by both of them, that Brewer would not take the witness stand in his own defense. Brewer contends that he had consented to the strategy of not testifying (and thus avoiding impeachment before the jury with approximately twenty prior convictions) because he believed that evidence of the complainant's reputation and activities as a prostitute (which in his view supported his defense that his sexual activity with her was consensual) would be introduced before the jury. It was contemplated that this evidence would be presented in part through the testimony of Brewer's friend, Hassan Abdullah, whom Brewer had introduced to the complainant. Brewer testified that when he learned that introduction of this evidence would not be allowed,[1] he told his attorney that he wanted to take the stand. By this time, however, counsel had rested her case, and she told Brewer it was too late for him to testify.
At the motions hearing, the government, relied primarily on the testimony of Brewer's trial attorney. Explaining her strategy, counsel pointed out that the complaining witness and Abdullah, who had both testified for the prosecution, were vigorously cross-examined by the defense. She testified that as a result of the cross-examination, "there may have been some indication through [the complainant's] demeanor that she wasn't telling the truth." Trial counsel stated that although Abdullah denied in his direct testimony at Brewer's trial that Brewer had told him that the complainant might be available for sex for money, she (counsel) had impeached Abdullah with his grand jury testimony which was directly to the contrary. A prior inconsistent statement is not admissible for the truth of the matter asserted therein, but only to impeach the credibility of the witness, Brooks v. United States, 448 A.2d 253, 259 (D.C.1982), and the jury was so instructed. See DISTRICT OF COLUMBIA JURY INSTRUCTIONS, No. 1.06A (3d ed. 1978). Brewer's trial counsel testified, however, that
[i]t has ... been my experience that jurors, even though they may be instructed *1142 that they are only to consider evidence in a certain way, will hear the evidence and will consider it in ways they want to consider it. So the information was out there and it was out there in the government's case. I thought that was helpful.
The motions judge found, among other things, that trial counsel had advised Brewer not to testify because of his criminal record, and that Brewer had agreed to follow her advice. The judge found that the denial of the motion in limine did not alter Brewer's record or its potential consequences if disclosed to the jury, and that Brewer's attorney believed that she had been able to communicate the substance of the defense's "prostitution" theory through cross-examination of prosecution witnesses. The judge concluded that Brewer's attorney had fulfilled her professional obligations to her client both in relation to his right to testify and in discussing with him the issues which were the subject of the in limine motion.

II
In order to make out a case of constitutional ineffectiveness, Brewer must demonstrate both that his trial attorney's performance was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We confine our discussion to the deficiency prong, which we view as dispositive. This part of the Strickland test requires a showing that "counsel made errors so serious that [she] was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. "Judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to "eliminate the distorting effects of hindsight."[2]Id. at 689, 104 S.Ct. at 2065. Counsel is "strongly presumed to have rendered adequate assistance." Id. at 690, 104 S.Ct. at 2066.
There are, of course, limits:
While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.
United States ex rel. Williams v. Twomey, 510 F.2d 634, 640 (7th Cir.) (Wyzanski, J.), cert. denied, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975) (quoted in United States v. Cronic, 466 U.S. 648, 657, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984)). Nevertheless, the showing required of Brewer is a formidable one.
Brewer has explicitly conceded that, but for his lawyer's failure, after the denial of the motion in limine, to discuss with him once again the question whether he would testify, her performance was consistent with professional norms.[3] This concession, which is fully consistent with our reading of the record, is not dispositive, Cronic, supra, 466 U.S. at 657 n. 20, 104 S.Ct. at 2046 n. 20, but it is significant. In determining whether counsel's performance was deficient, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, supra, 466 U.S. at 688, 104 S.Ct. at 2065 (emphasis added). In general, the constitutional adequacy of defense counsel's representation "must be viewed in light of [her] total performance and not just on the basis of isolated acts," People v. Thomas, 215 Ill.App.3d 751, 159 Ill.Dec. 368, 375, 576 N.E.2d 37, 44 (1991); see also House v. Balkcom, 725 F.2d 608, 615 (11th Cir.) cert. denied, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); State v. Tokman, 564 So.2d 1339, 1343 (Miss. 1990); St. Peter v. State, 811 S.W.2d 729, 730 (Tex.App.1991), although a claim of *1143 insufficiency may be grounded even on an isolated error of counsel if that error is so egregious and so prejudicial that it has brought about a breakdown in the adversarial process. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986); Cronic, supra, 466 U.S. at 657 n. 20, 104 S.Ct. at 2046 n. 20.
The question before us is therefore whether trial counsel's failure to revisit with Brewer the question whether he should testify was an error so egregious that the adversarial process was undermined  i.e., whether an unarmed (i.e., effectively unrepresented) defendant was placed at the not so tender mercies of prosecutorial gladiators. Cronic, supra, 466 U.S. at 657, 104 S.Ct. at 2046. We are satisfied that no such deficiency was shown. Brewer had agreed with counsel that he should not take the stand, and this decision averted the disastrous potential of impeachment with an extensive criminal record.[4] Given the degree to which trial counsel succeeded in bringing out before the jury, at least indirectly, the complainant's alleged association with the exchange of sex for money,[5] it was surely not unreasonable for her to assume that the strategy would and should remain the same regardless of the denial of the motion in limine. While, in hindsight, a further consultation with Brewer following the denial of the motion in limine might perhaps have been preferable to simply staying on course, retrospective second-guessing is not a part of the Strickland test.

III.
For the foregoing reasons, the order appealed from is hereby
Affirmed.[6]
NOTES
[1] Brewer claimed that he did not understand the proceedings regarding the motion in limine.
[2] As the court recently stated in People v. Williams, 215 Ill.App.3d 800, 159 Ill.Dec. 399, 405, 576 N.E.2d 68, 74 (1991), in a passage which captures the reality of the barristerial experience,

[i]ncompetency of a trial lawyer cannot be judged by what he or she feels he should have done after the trial is over. After a trial, whether it be civil or criminal, every lawyer, no matter how experienced, can think of a number of things he or she should have said or done as well as matters that should have remained unsaid or undone.
Would that we erstwhile courtroom warriors could take back that one question too many on cross-examination!
[3] Brewer made two additional claims of ineffectiveness before the motions judge, but has not pressed them on appeal.
[4] There are empirical studies which demonstrate the danger to a defendant with criminal convictions who takes the stand in his own defense; contrary instructions notwithstanding, jurors often hold such convictions against the defendant on the merits. See, e.g., Thompson v. United States, 546 A.2d 414, 424-25 (D.C.1988).
[5] Counsel's testimony that she thought she had made points in relation to the demeanor of prosecution witnesses is an important one,

[f]or the demeanor of an orally-testifying witness is always assumed to be in evidence. It is wordless language. The liar's story may seem uncontradicted to one who merely reads it, yet it may be contradicted in the trial court by his manner, his intonations, his grimaces, his gestures, and the like  all matters which cold print does not preserve and which constitute lost evidence so far as an upper court is concerned.
Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 175 F.2d 77, 80 (2d Cir.1949) (footnotes and internal quotation marks omitted). Although we know from hindsight that Brewer did not win acquittal, this does not convert counsel's weighing of various alternatives into ineffective assistance.
[6] Brewer asserts in his brief that his counsel "specifically told him that his defense would be presented to the jury through other witnesses and that the decision as to testifying was not irrevocable and could be changed if necessary." At the motions hearing, however, Brewer testified as follows on direct examination with regard to what occurred after his counsel had advised him not to testify:

Q. What did you decide? At that time what was your decision as far as whether you were going to testify or not?
A. Not to testify.
Q. And what was your understanding as to whether or not you had the right to change your mind about that?
A. That it was my right, if I wanted to testify; it was one of my obligations, I could testify.
Q. And did you discuss any factors that might cause you to change your mind with her?
A. No, we didn't discuss no factors.
There was thus no evidence that trial counsel had assured Brewer that the issue would be revisited if his defense witnesses were not allowed to testify.