IN THE SUPREME COURT OF MISSISSIPPI

NO. 94-KA-00869-SCT

*CHRISTOPHER DANTZLER*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | JULY 15, 1994 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BOBBY L. SHOEMAKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY | DEWITT L. (RUSTY) FORTENBERRY, JR. |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

This is an appeal from the denial of a motion to vacate or set aside the conviction. The conviction resulted from Christopher's Dantzler's guilty plea to sexual battery in the Circuit Court of Jasper County, Mississippi. Judge Robert G. Evans sentenced Dantzler to thirty (30) years in the custody of the Mississippi Department of Corrections.

Aggrieved by the disposition below, Dantzler asks this Court to review the following issues:

**I. WHETHER DANTZLER WAS DENIED EFFECTIVE REPRESENTATION BECAUSE HE WAS NOT FULLY INFORMED OF THE EVIDENCE AGAINST HIM?**

**II. WHETHER DANTZLER WAS COERCED INTO PLEADING GUILTY BECAUSE THERE WAS INSUFFICIENT ADMISSIBLE EVIDENCE TO SUPPORT HIS PLEA TO THE CHARGE OF SEXUAL BATTERY?**

**III. WHETHER DANTZLER WAS NOT GIVEN THE BENEFIT OF HIS CONSTITUTIONAL RIGHTS DUE TO NOT BEING FULLY ADVISED OF ALL OF THE EVIDENCE PRIOR TO HIS PLEA?**

## STATEMENT OF THE FACTS

On April 15, 1991, R.H., a female child under the age of fourteen years, and Virginia Husband were riding their bicycles in Heidelberg, Mississippi, when they saw Christopher Dantzler, a male over the age of eighteen years. Dantzler suggested to R.H. and Virginia they come to his house to pick up a bag of clothes his mother had wanted to give them. Thereafter, R.H. and Virginia rode their bicycles to the Dantzler home.

R.H. and Virginia waited on the porch while Dantzler went into the house for the bag of clothes. Upon receiving the clothes, Virginia got onto her bicycle. As R.H. began to get onto her bicycle, Dantzler grabbed her, pulled her into the house and locked the door. R.H. was unable to free herself from Dantzler's grasp.

Dantzler pulled R.H. into his bedroom. He told her to take off her clothes and that they would have intercourse. R.H. refused. Dantzler hit, bit and took off R.H.'s clothing. Dantzler then took off his clothing. R.H. called out to Virginia and told her to get her mother. Virginia then left to find help.

R.H. stated Dantzler then began to insert his penis into her vagina. R.H.'s mother began yelling from outside the house for R.H. to come out. Upon hearing R.H.'s mother Dantzler stopped. However, Dantzler choked R.H. so she could not answer her mother. When they could not hear R.H.'s mother any longer, Dantzler pulled R.H. to the carport. Dantzler then took her bicycle and brought it into the house. Dantzler then locked the doors, turned off the lights and disconnected the telephones.

Dantzler threatened to kill R.H. if she ever told anyone what had happened. Dantzler took R.H. back into his bedroom and put her under the bed. Dantzler's bed frame was a wooden box style fully enclosed from the mattress to the floor. Upon arriving at the scene, Police Officer Cochran knocked on the door and observed all windows had bars on them. Cochran called Mrs. Dantzler at work, who arrived a few minutes later. Mrs. Dantzler opened the door and allowed Cochran to enter the house. Mrs. Dantzler yelled out to her son. Upon hearing Mrs. Dantzler's voice, R.H. began yelling again. Cochran and Mrs. Dantzler entered Dantzler's bedroom and found R.H. under the bed. Officer Cochran took R.H. outside to the squad car. He then reentered the Dantzler home and within a few minutes found Christopher Dantzler.

Officer Cochran instructed R.H.'s mother to take R.H. to the police station. Cochran then drove Dantzler and his mother to the station. After talking with R.H. for a few minutes at the station, she was instructed to go directly to the hospital in Laurel for a rape kit examination. Dantzler was placed in police custody; he did not make a statement or admit guilt.

Dr. Hugh Stancill, the physician who examined R.H. the night of the attack, testified that the

examination revealed a bruise resembling a bite mark on her upper arm and a bruise on her left cheek bone. Dr. Stancill found R.H.'s introitus slightly red. He explained that although R.H.'s vagina was not lacerated or bleeding, he could not state with certainty whether the redness was caused by the attack or if R.H. had been raped.

On August 12, 1991, Christopher Dantzler was indicted for kidnapping and the forcible rape of a child under the age of fourteen years.

On April 10, 1992, Dantzler agreed to enter a plea of guilty to sexual battery. In return, the charge of kidnapping would be dismissed and the rape charge would be reduced to sexual battery, and the State would recommend the maximum punishment for sexual battery, thirty (30) years.

Dantzler was represented by his court appointed counsel, Tom Tullos and John N. Satcher. Judge Evans stated before he could accept the guilty plea, the court must first determine if the plea is knowingly, understandingly, freely and voluntarily made. Dantzler stated he was not under the influence of drugs or alcohol.

The court asked the State how it would prove the charges. In response, Assistant District Attorney Richard Webb stated:

> Your Honor, the state is prepared to show through the testimony of R.H. that on April the 15th, the date alleged in the indictment, 1991, that she went to the home of Mr. Chris Dantzler at his suggestion to pick up a package of clothes. The State would further show that Mr. Dantzler went in the house, got the clothes, come back out, handed the clothes to R.H., at which time he grabbed her and forced her into the house, took her down to his bedroom, at which time he had carnal knowledge of R.H. against her will. The State would further show that at the time she was a child under the age of fourteen. The State would further show that he was a male person over the age of eighteen years old. This would further be corroborated by the testimony of Virginia Husband, her cousin, who was present and saw Mr. Dantzler take R.H. into the home and also heard her cries for help from within the bedroom. The State would prove all of this in violation of Section 97-3-95 of the Mississippi Code of 1972 Annotated.

Dantzler stated he did not disagree or wish to add anything to Webb's statement. Dantzler stated everything Webb said was true and that indeed had committed the crime.

Webb informed the court that the state was recommending a thirty (30) year sentence for Dantzler. Dantzler confirmed the recommendation was the same as he expected it to be, and that he understood the maximum sentence he could receive for the conviction was thirty (30) years and the minimum sentence five (5) years. The court explained it was not bound to the State's recommendation, and the court itself would determine his sentence. Dantzler stated he still wanted to plead guilty to the charge. Further, Dantzler went on to say that he had not been threatened by anyone to make him plead guilty; he had not been promised anything by anyone to persuade him to plead guilty; that his attorneys had not made any threats or promises to him in this case; that he had not been told by anybody that the court would be lighter on him if he pled guilty; that he fully understood the consequences of his plea and he understood he was admitting he did, in fact, commit the crime.

The court explained if he chose not plead guilty the State must prove his guilt beyond a reasonable

doubt and all twelve jurors must agree to convict him. Dantzler stated he understood that by pleading guilty, he would waive the requirement of the State proving guilt beyond a reasonable doubt. The court informed Dantzler he had a right to be confronted by the witnesses against him, if he did not plead guilty, and would be allowed to cross-examine each witness. However, if Dantzler entered a guilty plea, he would waive his right to be confronted by the witnesses against him and would waive the right to question the witnesses. Dantzler stated that he understood. The court asked Tullos and Satcher individually if they each believed Dantzler understood what he was doing by entering the plea. Each attorney responded affirmatively. Dantzler responded he was satisfied with the services of each of his attorneys, that his attorneys had properly advised him regarding the plea and neither of them had threatened or promised him anything to coerce a guilty plea. Judge Evans asked a third time if Dantzler still wished to plead guilty. Dantzler responded, "Yes, sir."

The trial court found there did existed a factual basis for Dantzler's guilty plea and the guilty plea of Dantzler was intelligently, understandingly, freely, voluntarily and knowingly made. The guilty plea was accepted as was the thirty (30) year sentence recommendation.

Webb stated he did not know if the five (5) year minimum sentence would apply to Dantzler because he was not a second time offender. The court then asked Tullos and Satcher to confer with Dantzler to determine if the change in the minimum sentence would change his mind regarding the plea. After a break, Satcher stated the minimum sentence should be amended from five (5) to zero (0) years. The court asked if the change affected the legitimacy of the plea. Satcher responded it did not. The court then asked if Dantzler still wished to plead guilty. Dantzler responded, "Yes, sir." The petition was then amended and initialed by Dantzler. The court asked Dantzler if he understood the minimum sentence that could be imposed was zero (0) years. Dantzler responded, "Yes, sir." The court asked if he wished to withdraw the guilty plea. Dantzler responded, "No, sir." Court was then adjourned.

On May 20, 1993, Dantzler filed a motion to vacate or set aside the conviction. Included in his many claims of error were: (1) court appointed attorneys deliberately refused to formulate and prepare an adequate defense to attempt to acquit Dantzler of the charges, and knowingly, did coerce Dantzler to plead guilty to charges, when they knew through documented medical reports Dantzler was innocent of rape; (2) the certified report prepared by the Mississippi Crime Laboratory based upon the examination of the rape kit would have been positive proof Dantzler was not guilty of rape; (3) court appointed attorneys had knowledge of the report before hauling Dantzler into court; (4) the prosecution chose a vindictive measure to convict Dantzler, rather than to disclose to the court evidence of his innocence; (5) court appointed attorneys chose to coerce Dantzler to plead guilty rather than to proceed to trial and defend Dantzler, where justice would have prevailed; (6) the vindictive, malicious and sadistic acts caused Dantzler to plead guilty to charges, where the prosecution had personal and convincing knowledge Dantzler was not guilty, and that his plea of guilty was not voluntarily and intelligently made; (7) the trial court did not make a factual basis for the plea, explain the nature and consequences of the plea, explain the right to a jury trial, advise Dantzler of the minimum and maximum sentences or his constitutional right to remain silent; (8) Dantzler did not voluntarily and intelligently enter the guilty plea; (9) the prosecution failed to disclose evidence favorable to Dantzler.

On July 25, 1994, a hearing was held to consider Dantzler's motion to vacate or set aside the conviction. Bobby Shoemaker was appointed to represent Dantzler at the hearing. Webb again

represented the State. Dantzler was sworn and called as the first witness. Dantzler stated he felt Tullos and Satcher did not present an adequate defense because, from the beginning, they were looking at plea bargains and never spoke of going to trial. Dantzler stated he only saw three statements, those of R.H., Officer Cochran and the transcript of the preliminary hearing. Dantzler stated he never saw statements from J.H., R.H.'s mother; Jane Webb, a nurse, who saw R.H. at the hospital; Dr. Stancill, who examined R.H., Virginia Husband; or Cindy Wood, a social services worker who investigated the matter. Dantzler admitted he was present at the preliminary hearing. Dantzler alleges he did not see and did not know his trial counsel had taped interviews with R.H., Virginia and R.H.'s mother. Dantzler stated he asked his trial counsel but never saw lab reports from the State crime laboratory. Instead, Satcher told him the reports really did not matter at the time. Dantzler alleges he had not seen and did not know of the contents of the lab report until after he had pled guilty to sexual battery.

Dantzler was asked why he felt he was refused an adequate defense. Dantzler stated the only time he ever saw his attorneys was when they informed him of a proposed plea bargain or to inform him of motions that had been filed and then again at the plea hearing. When asked why he felt he had been coerced into pleading guilty, Dantzler stated, "... if I had known the information of my case, I wouldn't have never pleaded. I would have went to trial with it. I felt like they didn't give me the right amount of information as far as letting me know what was happening with my case in order for me to know what was going on. And by me not knowing that, when they came to me and told me -- asked me would I accept the plea, I accepted it because I didn't know what else to do."

When asked why he stated he understood each time the trial court asked, Dantzler stated he was told to answer "yes" or "no" when accepting a plea, and he was answering the way he was told. When asked why he stated he understood he was admitting to committing sexual battery during the plea hearing, Dantzler stated he answered affirmatively because he did not know what else to do, and because he had been told to do so.

Dantzler stated he did not rape the victim and the lab report did not show penetration, semen fluid or bruises. Further, Dantzler stated he did not understand why he had to accept a thirty year sentence when he did not have carnal knowledge of the victim. Dantzler was asked what vindictive, malicious and sadistic acts were committed by Satcher and Tullos to coerce Dantzler to plead guilty. All Dantzler offered was his attorneys pressured him into doing something he did not want to do even though he was innocent, and they were not interested in proving his innocence.

Dantzler admitted he knew and understood he had been indicted for capital rape and kidnapping. He further admitted he knew and understood the kidnapping charge would be dismissed and the capital rape charge reduced to sexual assault and the State would recommend a thirty (30) year sentence. Dantzler testified he understood he was pleading guilty of sexual battery.

Dantzler admitted he had stated that no one had promised him anything in order to get him to plead guilty, his attorneys had not made any threats or promises, he was satisfied with the services of Tullos and Satcher and neither one had threatened him in any manner or promised anything; and that Tullos and Satcher had properly advised him of his plea and had properly represented him in the case. Dantzler admitted to understanding each question. Only after studying the transcript and lab reports did Dantzler decide he had been coerced to plead guilty. Dantzler stated he would have rather have

had gone to trial if he had been aware of all the information. Dantzler stated he did not lie at the plea hearing when he stated he had not been threatened or coerced in any way. Dantzler admitted he initialed section 14 of the plea petition which stated, "That I did sexually assault R.H. at a time that I knew she was under the age of fourteen years and that it was against the law." Dantzler stated he lied to the trial court when he stated everything in the petition was true. Dantzler contends the above statement is not true. Dantzler admitted he told the trial court he was entering the plea freely and voluntarily, and no one threatened or coerced him.

Tullos was called as a witness by the State. Tullos testified he went over the witnesses statements and what each would testify to with Dantzler. Tullos further testified he went over the lab reports with Dantzler and everything else the district attorney's office had given to the defense. Tullos stated the State properly complied with discovery requests; that he and Satcher interviewed the witnesses and video taped those statements; and that he went over those statements with Dantzler. Tullos stated negotiations with the prosecution led to the kidnapping charge being dismissed and the capital rape charge being reduced to sexual battery. Tullos denied he coerced or threatened Dantzler and that Dantzler personally decided to accept the plea. Further, Tullos stated he did not know of any incident where Satcher coerced or threatened Dantzler. Tullos stated he believed Dantzler entered the plea freely and voluntarily. Finally, Tullos testified he did not withhold information, statements or lab reports from Dantzler.

On cross-examination, Tullos stated he did not remember giving Dantzler a copy of each statement, but he remembered sitting down with Dantzler and discussing the gist of each statement and how each witness would testify. Tullos stated he did not remember Dantzler watching the video tape of the witnesses statements.

Satcher's testimony corroborated that given by Tullos.

Dantzler was called to testify again. Dantzler stated he did not insist on entering a plea agreement. However, Dantzler admitted he agreed to the plea after hearing the sentence recommendation had decreased from 40 to 30 years.

After closing statements, the circuit court found there was no evidence Dantzler was coerced by his trial counsel, and that there was no evidence that defense attorneys acted in a vindictive, malicious and sadistic manner. Judge Evans stated a review of the plea hearing shows the trial court did make a factual basis for the enrollment of the plea, and that Dantzler was advised of the nature and consequences of his plea, was advised of the charges, advised of his constitutional rights, advised of his right to remain silent, advised of his right to a jury trial and advised of the minimum and maximum penalties for the plea entered. Judge Evans found there to be no reason to have advised Dantzler of the maximum and minimum sentences for capital rape and kidnapping because Dantzler did not plead guilty to these crimes. Further, the trial court asked Dantzler twice if he had been promised anything by anybody in return for his guilty plea, and Dantzler answered negatively. After Judge Evans denied the motion to vacate, Dantzler filed a notice of appeal on August 12, 1994.

## DISCUSSION OF THE ISSUES

### I. WHETHER DANTZLER WAS DENIED EFFECTIVE REPRESENTATION BECAUSE HE WAS NOT FULLY INFORMED OF THE EVIDENCE AGAINST HIM?

This Court will not set aside a decision of the trial court after an evidentiary hearing on a request for post-conviction relief unless the finding by the trial court is clearly erroneous. *Tokman v. State*, 564 So. 2d 1339, 1341 (Miss. 1990); *Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988)

Dantzler contends he never saw the transcripts of statements taken by law enforcement of R.H., Jane Webb, Dr. Stancill, Cindy Wood, Virginia Husband and J.H. Dantzler alleges inconsistencies and contradictions throughout these statements were never brought to his attention, and therefore he did not make an informed and intelligent waiver. Further, Dantzler contends he was never shown copies of lab reports prior to pleading guilty to sexual battery. Dantzler states if he had known the lab report did not show evidence of pubic hair, semen, penetration or body fluids, he would not have pled guilty. Dantzler states this evidence is necessary to the prosecution of a capital rape case. Dantzler contends the lack of evidence could not uphold a capital rape conviction. Because he was not informed of the lack of evidence against him, Dantzler states he could not have made an intelligent decision to plead guilty.

Obviously, Dantzler forgot he pled guilty to sexual battery and not to capital rape and kidnapping, and therefore evidence of capital rape and kidnapping was not needed. Testimony at the evidentiary hearing directly refutes Dantzler's contentions that he was not informed of the lab reports and witnesses' statements. Dantzler was represented at trial by two court appointed attorneys, Satcher and Tullos. Tullos testified he and Dantzler discussed the lab reports, witnesses' statements and other documents received in discovery. Although Tullos did not remember giving Dantzler a copy of each statement and document, he did remember discussing all of the evidence with Dantzler.

Satcher also testified at the evidentiary hearing. Satcher stated he remembered discussing witnesses' statements and the lab reports with Dantzler. Satcher testified he remembered informing Dantzler the lab reports did not find any evidence of semen or pubic hair. Additionally, Satcher testified Dantzler was given copies of many of the documents. Although Satcher did not remember if Dantzler viewed the video taped questioning of the witnesses, Dantzler was informed of what each witness had said. Satcher stated neither he nor Tullos coerced Dantzler to plead guilty and all evidence was discussed with him. Satcher stated Dantzler insisted on entering plea negotiations. Satcher stated he believed Dantzler entered the guilt plea freely and intelligently.

Credible evidence was presented at the evidentiary hearing directly refuting Dantzler's contention he was not informed of the evidence against him. This assignment of error is without merit.

### II. WHETHER DANTZLER WAS COERCED INTO PLEADING GUILTY BECAUSE THERE WAS INSUFFICIENT ADMISSIBLE EVIDENCE TO SUPPORT HIS PLEA TO THE CHARGE OF SEXUAL BATTERY?

Dantzler contends he was coerced to plead guilty to sexual battery because he was not informed of the lack of admissible evidence against him. However, testimony by his trial counsel at the evidentiary hearing revealed Dantzler was informed of the very evidence he now claims was hidden from him. The circuit court judge's decision was correct and does not constitute manifest error.

### III. WHETHER DANTZLER WAS NOT GIVEN THE BENEFIT OF HIS CONSTITUTIONAL RIGHTS DUE TO NOT BEING FULLY ADVISED OF ALL OF THE EVIDENCE PRIOR TO HIS PLEA?

Dantzler raises a plethora of reasons to contend he did not make an intelligent and voluntary decision to plead guilty. Dantzler states the choice between accepting a thirty (30) year sentence for sexual battery and the possibility of death if convicted of capital rape and kidnapping was not really a choice at all without the knowledge of all of the evidence. Dantzler contends there is no factual basis to support the plea and conviction, because at the plea hearing, Assistant District Attorney Webb did not say the State could prove Dantzler had carnal knowledge of the victim by physical or forensic examination. Dantzler states the entire record is void of any evidence indicating penetration, laceration or tearing, semen, blood, body fluid or pubic hair. Further, Dantzler states he did not know nor was he told the meaning of carnal knowledge. Finally, Dantzler contends the State committed reversible error because Dantzler was informed the minimum sentence he could receive was five (5) years instead of zero (0) years initially. Because of these reasons Dantzler contends he did not enter the guilty plea knowingly and intelligently.

Both of Dantzler's trial counsel testified he was fully informed of all evidence against him, including the lab reports Dantzler now relies on to support his claims. Indeed, Dantzler may have easily made the decision to accept a thirty (30) year sentence instead of facing a possibility of death if convicted of capital rape and kidnapping. Based upon the testimony of his trial counsel, Dantzler was informed of the contents of the physical evidence possessed by the prosecution and the expected testimony of the victim and other witnesses. At the plea hearing, Judge Evans asked Dantzler if he had indeed committed the sexual battery of R.H. Dantzler answered, "Yes, sir." Now, Dantzler contends he was not informed of the meaning of carnal knowledge. Testimony at both the plea hearing and the evidentiary hearing reveal Dantzler received counsel regarding the nature of the plea, its sentence, waiver of rights, and admission of guilt.

In a nutshell, Dantzler has now been exposed to prison and would rather gamble his life with a jury than be guaranteed a thirty year sentence. Dantzler attacks the presentation of the evidence at the plea hearing. Dantzler was informed that by pleading guilty, the prosecution was not required to prove his guilt beyond a reasonable doubt. If Dantzler wished to attack the evidence, he should not have pled guilty. Dantzler agreed to plead guilty to sexual battery and knew the State would recommend a thirty year sentence, and in return, the capital rape charge would be reduced to sexual battery and the kidnapping charge would be dismissed. At the plea hearing, Dantzler was informed the minimum sentence was 5 years and maximum 30 years. After accepting Dantzler's guilty plea, Judge Evans sentenced Dantzler to 30 years. Immediately after the court accepted Dantzler's plea, Webb stated he thought the minimum sentence may be 0 years. The circuit court took a break to research the correct minimum sentence and determined it to be 0 years. Dantzler and his counsel were given time to discuss this issue and decide if a change in the possible minimum sentence would change Dantzler's decision to plead guilty. Judge Evans asked Dantzler twice if he wished to withdraw his guilty plea; both times Dantzler responded negatively.

Evidence presented indicated Dantzler was informed of all evidence against him, and that was advised of the plea and its consequences. Moreover, Dantzler reaffirmed his wish to plead guilty to sexual battery after he had been given two opportunities to revoke his plea. Dantzler's contentions are without merit.

## **CONCLUSION**

Testimony of Dantzler's trial counsel revealed Dantzler was fully informed of all evidence held against him prior to entering the guilty plea. Thus, Dantzler's various contentions that his plea was coerced and not intelligently and freely entered are meritless. Dantzler did not offer any other evidence of coercion except he was not informed of the evidence. Because no manifest error was found, we affirm the judgment of the circuit court.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**