507 So.2d 94 (1987)
James M. FERGUSON
v.
STATE of Mississippi.
No. 56453.
Supreme Court of Mississippi.
May 6, 1987.
Leslie Scott, Bryan, Nelson, Allen, Schroeder & Compton, Biloxi, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This appeal from the Circuit Court of Harrison County calls upon us to discuss the duty of a lawyer towards his client.
A Biloxi police officer found the appellant James Ferguson crouching in an alley next to a warehouse door. As the officer approached, Ferguson dropped some objects into the grass near the building. These turned out to be a screwdriver and a tire tool. Upon seeing this, and noticing that the tin covering on the door had been pried back, the officer arrested Ferguson for attempted burglary.
Ferguson having had several major encounters with the law before, the grand jury indicted him not only for this crime, but as an habitual offender under the provisions of Mississippi Code Annotated, Section 99-19-83 (Supp. 1986). He waived his right to a jury, and was tried by the circuit judge in a bench proceeding. The judge found him guilty of the attempt at burglary, and also found him an habitual offender under the terms of the statute. He was sentenced to life imprisonment without possibility of parole.
Ferguson's appeal is now before us. We reverse.
While numerous errors are assigned regarding both phases of the trial, we shall discuss only those relating to the troubled relationship between Ferguson and his court-appointed lawyer, as these seem decisive to us.
In ruling on a motion for new trial, the circuit judge remarked, not without some understatement, that "[b]y the time the trial ended, [defense counsel] and Mr. Ferguson were not exactly in love with each other, to put it lightly." Their disagreements came to a head after the state had rested and one defense witness had testified. At that juncture, Ferguson addressed the court and said, "me and my lawyer spoke in the back and he agreed to dismiss himself off the case for representing *95 me. It seems like we can't come to any agreement about witnesses... ." Ferguson explained that he wanted to call several witnesses, especially one Washington Favre, who had been arrested after being seen fleeing from the scene of the burglary.
At various times during the trial Ferguson renewed his request to replace trial counsel. Sometimes these requests took the form of a motion for appointment of new counsel, sometimes a motion for continuance so he could seek new counsel and at other times, a motion for mistrial for lack of effective assistance of counsel. Ferguson told the court repeatedly that he was not qualified to conduct his own defense. The trial judge denied all of these motions. Trial counsel took pains to inform the court that the disaffection was mutual. On one occasion after Ferguson had made one of his motions, the court asked him whether the state had denied him any information necessary to the defense. Trial counsel replied: "Not a thing, I have been lied to by my client and I do not feel I can even sit here with him, and I regret it, but it is a fact, and I think the court ought to know it."
Later Ferguson said trial counsel had led him to believe that he, trial counsel, had been in touch with Miller, the attorney who had represented Ferguson at the preliminary hearing. Ferguson believed Miller's notes could be used to impeach the testimony of the officers. When trial counsel heard this he immediately said, "Your Honor, he is lying, and I am getting tired of it."
Except for Favre, the witnesses desired by Ferguson were found by court officials. Trial counsel questioned only one of them; the others were questioned by Ferguson himself, with some assistance from the court. Not surprisingly, Ferguson was unable to elicit a coherent body of testimony from them. Trial counsel gave no clear explanation concerning his position on these witnesses. On the one hand, he indicated a belief that they would not help his client's case and might even harm it. On the other hand, at one point he admitted that he "forgot" about these witnesses and was not "on top of this matter." Moreover, it appears from the record that trial counsel never even interviewed Washington Favre. When questioned about this absence, trial counsel said: "I don't like to have witnesses that I don't know what they're going to testify about."
Finally, trial counsel declined to make a closing argument, saying instead that he would "defer" to the defendant. Trial counsel was excused from the case after moving for a new trial. The circuit judge then appointed Ferguson's present counsel.
On appeal, Ferguson argued that his attorney's behavior denied him effective assistance of counsel.
That the Sixth Amendment's guaranty of a fair trial includes the right to effective assistance of counsel has been established by a long line of cases stemming from Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). But it is also true that under the prevailing constitutional doctrine, a defendant contesting his conviction on that ground must bear a heavy burden. Claims of ineffective assistance are governed by guidelines of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 675 (1984). "First," said the Supreme Court, "the defendant must show that counsel's performance was deficient... . Second, the defendant must show that the deficient performance prejudiced the defense." Although it need not be outcome determinative in the strict sense, 466 U.S. at 687, 104 S.Ct. at 2068, 80 L.Ed.2d at 697-98, it must be grave enough to "undermine confidence" in the reliability of the whole proceeding. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In practice this second element of the Strickland test has proved an insuperable obstacle to many criminal appellants. Even a demonstrably deficient performance by a lawyer can be held insufficiently prejudicial where the evidence of the defendant's guilt is strong.
It appears to us that the performance of trial counsel was indeed deficient as regards his pretrial investigations. As noted above, the record supports the inference that trial counsel never even interviewed *96 Washington Favre. Given the fact that uncontradicted testimony had placed Favre at or near the scene of the burglary and that his client obviously wanted to convince the court that Favre was the actual burglar, this omission is startling. While it is true that courts are deferential to lawyers' judgments in such matters, there are limits. It has been held that "at a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case." Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir.1985) (emphasis added). See also, Bell v. Watkins, 692 F.2d 999, 1009 (5th Cir.1982); Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir.1979). It appears to us that trial counsel made little or no effort to conduct an independent investigation; rather, he seems to have relied almost exclusively on material furnished to him by the state during discovery.
Moreover, Ferguson testified that trial counsel met with him on the day of his appointment and promised to consult with him again, but never did. He did not see trial counsel again until the day of the trial. Further, Ferguson alleged that trial counsel failed to inform him the state was now seeking to try him as an habitual offender. According to Ferguson, he did not know this until the day of the trial. On appeal, Ferguson alleges that this represented a deficient preparation for trial on the part of trial counsel. The state retorts that "brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984). Perhaps not. But that principle should be read in the light of the Supreme Court's remarks in Strickland.
Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and information supplied by the defendant. Inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions. 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695-96. (Emphasis added).
A factor affecting the assessment of counsel's conduct in the present case is that trial counsel did not speak to his client after he learned that he was going to be tried as an habitual offender. It flies in the face of common sense to suppose that he could adequately meet this challenge without at least receiving some information from Ferguson about the circumstances of his prior convictions. Trial counsel stands accused of other derelictions, but those discussed above, in our opinion, establish that his performance was "deficient" within the meaning of the Strickland doctrine.
However, Ferguson must also show the required degree of prejudice. Here he is less fortunate. The evidence of his guilt was very great. It is difficult to imagine an innocent explanation for his presence at a warehouse door with burglary tools in his hands. At best, the testimony of Favre could have established that he had confederates. This, of course, would not normally be enough to acquit him. In short, we cannot say from this record that Ferguson was prejudiced to the requisite degree.
Some might say this should end our inquiry. The briefs of both parties seem to assume that Ferguson must sink or swim with the Strickland test  that no other relief under the Sixth Amendment is available to him.
We think otherwise. The Sixth Amendment has many mansions, and not all of them bear the sign of effective assistance of counsel.
At the outset of this discussion, we must note that Ferguson's appeal is framed in terms of the ineffective assistance claim only. This, however, does not preclude us from noting other constitutional violations should any exist. Miss.S.Ct.R. 6(b). "We tend to disregard procedural niceties where such is necessary to avoid the possibility of a serious miscarriage of justice." House v. State, 445 So.2d 815, 820 (Miss. 1984); See also Waldrop v. State, 506 So.2d 273 (Miss. 1987); Read v. State, 430 So.2d 832, 838 *97 (Miss. 1983); Brooks v. State, 209 Miss. 150, 155, 46 So.2d 94, 97 (1950).
The Sixth Amendment right to a fair trial is an "umbrella" right, so to speak  a fundamental right with many component or corrollary rights. Where some of these subsidiary rights are violated, it may be necessary to calculate the amount of "prejudice" resulting  but only because such a calculation is necessary to find out whether the over-arching right to a fair trial has been factually compromised. The inquiry into effective assistance of counsel is of this nature. In some cases, a lawyer's shortcomings may have so little effect on the proceedings that no practical prejudice to the defendant results.
Some Sixth Amendment violations, however, are so flagrant that no punctilious calibration of prejudice is necessary. If a given defendant were to be denied counsel altogether, it would not occur to any appellate judge to ask whether that defendant had suffered prejudice. Rather, it would go without saying that the denial, ipso facto, had deprived him of a fair trial, and that any conviction must be reversed. Even an obviously guilty defendant is entitled to a fair trial. E.g., Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961); Coleman v. Kemp, 778 F.2d 1487, 1541 (11th Cir.1985). See also Waldrop v. State, supra.
We are of the opinion that an independent violation of the Sixth Amendment occurred in the present case when Ferguson's lawyer denounced him as a liar in open court before the trier of fact, and that this was an evil of such magnitude that no showing of prejudice is necessary for a reversal.
Strickland itself recognizes that a lawyer has a duty to represent his client not only with diligence but with loyalty. Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). See also, Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967); U.S. v. Alvarez, 580 F.2d 1251, 1256 (5th Cir.1978). No more devastating breach of this duty can be imagined than for a lawyer to denounce his client before the trier of fact as untruthful.
Lowery v. Cardwell, 575 F.2d 727 (9th Cir.1978), was, like the present case, a bench trial. In that case a lawyer was conducting direct examination of his client. From the answers it became apparent to the lawyer that his client had perjured herself. The lawyer immediately moved for permission to withdraw from representation, stating that he could not give his reasons for doing so. The Ninth Circuit held that the lawyer's action had effectively deprived the defendant of his Sixth Amendment right to a fair trial. The court reasoned that under the circumstances, the motion amounted to an unequivocal announcement that the defendant had lied on the stand. Although it commended the lawyer for refusing to condone his client's perjury, the court saw no way out of reversing the conviction:
We start with the basic proposition that where under these circumstances, counsel informs the fact-finder of his belief [that his client was lying] he has by that action disabled the fact-finder from judging the merits of the defendant's defense. Further, he has by his action openly placed himself in opposition to his client upon her defense. The consequences of such action on the part of counsel in our judgment are such as to deprive defendant of a fair trial. 575 F.2d at 730.
If such reasoning applied in Lowery, which merely involved the fact finder's drawing an inference from the lawyer's conduct, it obviously applies with even greater force in the present case, where the lawyer denounced his client in open court as a liar. How can a trial be called fair when the defendant's own attorney is attacking him?
We have great faith in Mississippi's trial judges, but it is no great disparagement of them to doubt that any of them could have retrieved this situation. We are certain that the trial judge made every effort to consider the evidence impartially and render a fair verdict. However, he would have to have been more than human to be *98 entirely unaffected by incidents of this type. He should have declared a mistrial immediately after trial counsel's first outburst.
Because we are reversing as to the underlying felony conviction, the habitual offender sentencing falls as a matter of course. The case must be remanded for a new trial.
REVERSED AND REMANDED.
WALKER, C.J., and ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.