# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01177-SCT

*GREGORY PAXTON PAYTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/95 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | WILLIAM MARTIN |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 3/12/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/13/98 |

**BEFORE SULLIVAN, P.J., BANKS AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal arises from the denial of Payton's motion for post conviction relief rendered on October 20, 1995 , by the Circuit Court of Harrison County, Mississippi in the criminal cause number 6150 after an evidentiary hearing was held on October 13, 1995. Payton was convicted of rape on April 19, 1990, and sentenced to thirty-five years in the Mississippi Department of Corrections. On direct appeal, this Court affirmed his conviction and sentence on December 31, 1992, issuing an unpublished opinion. ***Payton v. State***, 610 So. 2d 389 (Miss. 1992). Finding that Payton was denied effective assistance of counsel due to the failure to investigate the factual circumstances surrounding the alleged crime and provide him with a basic defense, we reverse and remand this case for a new trial.

## JURISDICTION OF THE TRIAL COURT

¶2. The State argues that the circuit court did not have jurisdiction to entertain a motion for post-conviction relief due to Payton's failure to follow the proper procedures. This argument is without merit because Payton wrote a motion for post-conviction relief to the circuit court and an application for leave to file a post-conviction relief motion to this Court both dated April 28, 1993. On January

25, 1995, this Court granted Payton leave to file his PCR motion and further stated that Payton has presented facts which would entitle him to an evidentiary hearing. Payton then filed a second PCR motion dated February 6, 1995, which was filed on February 10, 1995. The statute makes clear that when this Court allows the filing of the motion with the trial court, further proceedings shall occur under the several, enumerated sections of the Post Conviction Relief Act. Miss Code Ann. § 99-39-27(7)(b) (1994). Therefore, the circuit court did have jurisdiction to entertain this motion and grant an evidentiary hearing.

¶3. Payton assigns several errors for this Court's consideration, however finding that all issues other than the claim of ineffective assistance of counsel lack merit we decline to address them.

## INEFFECTIVE ASSISTANCE OF COUNSEL

¶4. A claim for ineffective assistance of counsel is judged by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984) and adopted by this Court in *Stringer v. State*, 454 So. 2d 468 (Miss. 1984). The two inquiries which must be made under the *Strickland* standard are "(1) whether counsel's performance was deficient, and, if so, (2) whether the deficient performance was prejudicial to the defendant in the sense that our confidence in the correctness of the outcome is undermined." *Neal v. State*, 525 So 2d 1279, 1281 (Miss. 1987) (*citing Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). Counsel's representation is deficient if the errors are so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient performance is prejudicial to the defendant if counsel's errors are so serious as to deprive the defendant of a fair trial. *Id.* When applying the *Strickland* standard, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Schmitt v. State*, 560 So. 2d 148, 154 (Miss. 1990). "To overcome this presumption, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Schmitt*, 560 So. 2d at 154 (brackets in original) (*quoting Strickland*, 466 U.S. at 694); *Nicolaou v. State*, 612 So. 2d 1080, 1086 (Miss. 1992). The defendant has the burden to satisfy both prongs of the test. *Edwards v. State*, 615 So. 2d 590, 596 (Miss. 1993). If either part of the test, deficient performance or prejudice, is not satisfied then the claim must fail. Payton asserts eleven separate claims in his brief in support of his contention that he was denied effective assistance of counsel but this Court finds that only the claims that relate to the failure to investigate are meritorious.

¶5. It is unclear who Payton's counsel was from the date of his arrest on April 27, 1988, until September 17, 1988 when there is no doubt that McKoin became his attorney of record. At the evidentiary hearing Mr. McKoin, the attorney who represented Payton at trial and on his direct appeal, testified that he was retained by Payton's mother in September of 1988. He said that he did not talk to Payton about case number 6150 until six, seven, maybe eight months after the first arrest because Fred Lusk or Jim Rose was his lawyer during those months and he did not know Payton in April of 1988. In contrast, Payton testified that he first saw McKoin on April 27, 1988, about 7:30 that night at the Biloxi County Jail. He testified that McKoin represented him at his initial appearance on April 28, 1988 and the next time he saw McKoin was in September of 1988, when he was arrested for the second charge of rape. Given these conflicting facts it is unclear who Payton's attorney was between April, 1988, and September, 1988, or if in fact Payton was represented by any attorney

during this time period.

¶6. Although the fact of who represented Payton during this time period is unclear, it is irrelevant to whether Payton was denied ineffective assistance of counsel since he has a constitutional right to have an attorney appointed if he cannot afford one. Even if, as McKoin testified, he did not represent Payton until several months after the incident, Payton had a right to have counsel and if McKoin was not his attorney then Payton may not have anyone responsible for pretrial investigation until months after he was first arrested. As stated by this Court:

> Some Sixth Amendment violations, however, are so flagrant that no punctilious calibration of prejudice is necessary. If a given defendant were to be denied counsel altogether, it would not occur to any appellate judge to ask whether that defendant suffered prejudice. Rather, it would go without saying that the denial, ipso facto, had deprived him of a fair trial, and that any conviction must be reversed. Even an obviously guilty defendant is entitled to a fair trial.

*Ferguson v. State*, 507 So. 2d 94, 97 (Miss. 1987).

¶7. Payton argues that the deficiency of McKoin causing him the most prejudice was the total lack of any pretrial investigation. As stated by this Court in Payton's direct appeal, "[m]uch of Payton's contentions amounts to a battle of 'he say, she say', all of which relates directly to credibility." This Court concluded that the verdict was not so against the weight of the evidence that reversal was warranted. This Court stated, "Here it is clear that there is conflicting evidence." The only witnesses called at trial on behalf of Payton were himself and his mother. The sole defense in this case was that the victim consented to having sex.

¶8. Given this contradicting testimony some investigation should have been done; pretrial investigation is of utmost importance. At least an attorney should have tried to interview people at the Alamo Plaza and the people who worked with the complaining witness at her workplace. Trial counsel even failed to interview the alleged victim's roommate at the time of the incident. It is true that this Court should give deference to an attorney's judgment in what investigation should be conducted. However, there are limits. "'[A]t a minimum, counsel has a duty to interview potential witnesses and to make *independent* investigation of the facts and circumstances of the case.'" *Ferguson*, 507 So. 2d at 96 (emphasis in original) (*quoting Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985)). This case is similar to *Ferguson* in the fact that the attorney's independent investigation was almost non-existent. Where the cases differ is that in *Ferguson* the defendant failed on the prejudice prong of the *Strickland* test as to the deficient performance in regard to investigation because the evidence of guilt in *Ferguson* was very great. *Id.* at 96. In the case *sub judice* the evidence of guilt was not nearly as strong; it was basically Payton's word against the alleged victim's word and who the jury believed. This fact was noted by this Court in the direct appeal of Payton's conviction.

¶9. There is no question that the defendant is entitled to a basic defense. *Triplett v. State*, 666 So. 2d 1356 (Miss. 1995). As to what a basic defense may entail, the language from the *Triplett* Court is instructive:

> Basic defense in this case required complete investigation to ascertain every material fact about this case, favorable and unfavorable. It required familiarity with the scene, and the setting. It

required through his own resources and process of the court learning the names of, and interviewing every possible eyewitness, and getting statements from each. It required prior to trial learning all information held by the state available to the defense through pre-trial discovery motions.

*Triplett*, 666 So. 2d at 1361. The testimony and evidence presented at the evidentiary hearing demonstrates that this basic defense was not provided to Payton. There is testimony that Payton paid Rose $100 to do this investigation on the alleged victim but he never retained him because he could not afford his services. McKoin stated at the evidentiary hearing his reason for not interviewing anyone, was because Jim Rose did not tell him about any witnesses, and any investigation, if he had done any, would have been several months after the incident. McKoin did not interview anyone at the Alamo Plaza, his reason being that the incident happened six or seven months before he got on the case. He further admitted that he did not talk to anyone associated with O'Charley's, the place of employment of the alleged victim for the same reasons. McKoin testified that he had"no chance to make a pretrial investigation because the -- all of the facts, had been investigated by Benjamin Graves and Jim Rose. What more could I investigate?" Apparently Graves is the private investigator Rose hired to do a background investigation on the alleged victim.

¶10. McKoin testified he never talked with the victim because it is his policy never to talk to the victims. In all fairness McKoin did go to the crime scene accompanied by Payton once, the week before the trial was held in April 1990, but he failed to take any pictures. Other facts pointing to Payton's trial attorney's deficiency was that there was no attempt to take statements from the construction workers or homeowners at the scene of the incident. If such an attempt had been made, these people could have been called to testify to whether they heard any of the hollering, screaming and horn blowing to which the alleged victim testified. Other than the NCIC report done by Rose's investigator, McKoin failed to inquire into the alleged victim's background, family and personal circumstances, and employment associations. Even after nearly two years of delay between the time of arrest and trial, Payton's attorney failed to conduct a scintilla of discovery other than to go to the crime scene one time and request the State to turn over its discovery. The most important witness that could have been called on Payton's behalf was James Comstock, the alleged victim's roommate at the time of the incident. With just a little investigation his identity could have been discovered since Mr. Zuber, the attorney appointed to represent Payton at his evidentiary hearing, found this witness many years after trial. Mr. Zuber taped an interview he had with Mr. Comstock on September 6, 1995. Given the fact that Mr. Comstock's statements contradict most of the alleged victim's trial testimony, this omission is startling. His testimony included among other things that she regularly caught rides to work, that he had seen the bruises on her thighs the day before the rape and when he asked her about them she told him that she had fallen out of her waterbed, that the alleged victim shared an apartment with him at the time the incident occurred, that she never mentioned to him about the perpetrator having a knife and that her clothes were not torn. This testimony by itself could have affected the outcome of the trial by casting doubt on the credibility of the complaining witness, especially since this case was all about credibility. Even at trial when the alleged victim's testimony revealed that there was a boyfriend, counsel failed to obtain his name. McKoin testified at the evidentiary hearing that he does not know why he did not secure his name. In addition, McKoin tried to impeach the alleged victim but he could not tell the court whether the charges pending against her had resulted in a conviction or not. Payton argues that had his attorney investigated the pending

charges that were identified in the NCIC report and found that the charges had resulted in a conviction that the judge may have allowed his attorney to impeach the alleged victim.

¶11. Payton argues that other witnesses should have been subpoenaed to testify on his behalf. He argues that counsel failed to subpoena the owner of the truck who could have testified whether the scratches in the truck were there before the incident took place and if the door could have been opened from the inside even if the doors to the truck were locked. Payton further argues that Officer Tim Chapman should have been subpoenaed because he could have testified that when he made a written statement of the alleged victim's statement on the day of the alleged incident there was no mention that Payton had threatened her with a knife. He also argues that Magistrate Judge Dewey Lawrence should also have been subpoenaed because he had the alleged victim in front of him when he issued the arrest warrant and he could have testified that the alleged victim failed to mention anything about being threatened with a knife. Payton cites to *U.S. v. Cronic*, 466 U.S. 648, 655 (1984) for the proposition "truth is best discovered by powerful statements on both sides of the question". "'The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.'" *Id.* (*quoting* *Herring v. New York*, 422 U.S. 853, 862 (1975)).

¶12. There was a total break down of the adversarial system in the case at bar. When determining if both prongs of the *Strickland* test have been met, deficient performance and resulting prejudice from those deficiencies, this Court must look to the totality of the circumstances. *Moody v. State*, 644 So. 2d 451, 456 (Miss. 1994). There are ample facts to support our conclusion that counsel's performance was deficient and that there is a reasonable probability that the outcome of the trial would have been different if some type of pretrial investigation had been done. *Strickland v. Washington*, 466 U.S. 668 (1984). The failure to adequately investigate the facts of the case, investigate prior convictions of the alleged victim and interview and subpoena witnesses on the behalf of the defendant is deficient performance. Given the fact that this case came down to the credibility of Payton and the complaining witness, there is a high probability that the outcome of the trial would have been different but for the deficient performance. When you add the fact that Payton may not have had any counsel between the time of his arrest in April of 1988, until September of 1988, there is no doubt that Payton received ineffective assistance of counsel. Because of counsel's failure to provide Payton with a basic defense this case must be reversed and remanded so that Payton can be given a new trial.

¶13. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR. SMITH, J., CONCURS IN RESULT ONLY.**