ROBERTS, J.,
concurring in part, dissenting in part.
¶ 51. I concur with the majority’s analysis of issues four and five. I also agree with the majority’s resolution of issue two. That is, I agree that an evidentiary hearing is necessary so that the trial judge can analyze the four speedy trial factors detailed in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). I would remand for proceedings consistent with Barnes v. State, 577 So.2d 840, 844 (Miss.1991) and Jasso v. State, 655 So.2d 30, 35 (Miss.1995). However, I cannot agree with the majority’s resolution of issues one and three. Accordingly, I respectfully dissent.
¶ 52. Incident to issue three, the majority finds that, upon a new trial, the circuit court should resolve whether the State produced all of the necessary individuals at the suppression hearing. I disagree. Scott claims that two necessary witnesses were not present — a Georgia jail guard and the notary. According to the record, the jail guard stayed outside the interrogation room and was not present or involved in obtaining Scott’s confession. Further, the notary only entered the interrogation room after Scott signed the typed statement. The notary’s sole function was to notarize Scott’s signature. In Mayes v. State, 925 So.2d 130, 135(¶ 11) (Miss.Ct.App.2005), this Court held that the prosecution need only present those people who allegedly coerced or induced a confession. Because the circuit court found that neither the jail guard nor the notary allegedly coerced or induced Scott’s confession, I would affirm the circuit court on this issue.
¶ 53. I strongly disagree with the majority’s resolution of Scott’s first issue. The majority states, “we find that, once Scott’s attorney informed the judge that Scott had confessed to the crime, the judge was thereafter precluded from judging the merits of Scott’s motion to suppress and should have recused herself.” This simply cannot be the law. In my opinion, the appropriate issue is whether the circuit court violated Scott’s constitutional rights to due process and a fair trial.
¶ 54. The Hinds County Public Defender’s Office was appointed to represent Scott shortly after Scott waived extradition and returned to Mississippi. Because the case was originally a death penalty case, both Michael Knapp and Tom Fortner represented Scott. Based on the record and the in chambers conference, early in their representation, Scott provided Knapp with sufficient details about the crime, as well as a confession of guilt, to convince Knapp that Scott was guilty. After Scott conferred with a “jailhouse lawyer” inmate, Scott changed tactics. Scott filed his own pro se motion to substitute counsel. He wanted to get rid of Knapp. He complained about Knapp to the Mississippi Bar. He filed numerous other pro se motions. Scott decided that he was going to testify, that he would deny having confessed, and that he would produce perjurious alibi witnesses. Knapp stated that Scott and his “jailhouse lawyer” were trying to “piddle with the court” by creating this ethical conflict for Knapp. According to Knapp, Scott “got up in [his] face” and demanded that Knapp subpoena his alibi witnesses. This entire conundrum was of Scott’s own making. The majority’s opinion endorses Scott’s effort to “piddle with the court.”
¶ 55. Though the majority’s resolution is not grounded in ethics, there can be no doubt that an ethical question was the catalyst for the ultimate due process issue. *897 It is undisputed that Knapp, Scott’s appointed trial counsel, believed that Scott intended to commit perjury. Scott’s trial counsel faced a significant ethical dilemma. He was ethically obligated to maintain his client’s confidence.[14] That, however, is not an unequivocal obligation. Counsel was also ethically obligated to avoid advancing a falsehood before the court. The Mississippi Rules of Professional Conduct set forth that “a lawyer shall not knowingly ... offer evidence that the lawyer knows to be false.” Miss. R. Prof. Conduct 3.3(a)(4). Further, all attorneys must take the following sworn oath, in pertinent part, upon admission to the practice of law: “I do solemnly swear ... that I will use no falsehood.” Miss.Code Ann. § 73-3-35 (Rev.2004). See also Miss. R. Prof. Conduct 1.2(d) (“A lawyer shall not counsel a client to engage, or assist a client, in conduct that a lawyer knows is criminal or fraudulent.”)
¶ 56. Knapp told the circuit court that Scott confessed his guilt and apparently supplied details that convinced Knapp that Scott was being truthful when he admitted his guilt. I sympathize with Knapp’s concern that continuing with his representation of Scott would require him to suborn perjury and thereby commit a criminal offense himself. The majority does not suggest that counsel acted improperly when he moved to withdraw. In my opinion, counsel acted appropriately. Mississippi Rule of Professional Conduct 1.16(a) provides that “a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the rules of professional conduct or other law.” Rule 1.16(b) sets forth that “a lawyer may withdraw from representing a client if: (1) the client persists in a course of action involving the lawyer’s services that the lawyer reasonably believes is criminal or fraudulent.”
¶ 57. Having resolved that Scott’s appointed trial lawyer was either obligated to seek withdrawal, or at least was within his rights to withdraw, the focus now turns to the trial judge. According to the comment to Mississippi Rule of Professional Conduct 1.16:
When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority .... Difficulty may be encountered if withdrawal is based on the client’s demand that the lawyer engage in unprofessional conduct. The court may wish an explanation of the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation.
See also URCCC 1.13 (An attorney cannot withdraw without court permission after making an appearance in a case.) Predictably, after counsel moved to withdraw, the trial judge required elaboration. In my opinion, it is absolutely understandable that the trial judge would want to hear some basis for a request to withdraw during a motion to suppress on the day of trial. I cannot find fault in the circuit court’s request for asking Knapp exactly why he felt it necessary to withdraw as counsel on the day of trial. It stands to reason, and certainly lies within the judge’s discretion to require some basis for such a request. As I read the majority opinion, the majority finds no error in the trial judge’s request for elaboration. In any event, Scott’s attorney revealed his belief that Scott intended to commit perju *898 ry. The trial judge was of the opinion that any newly-appointed counsel would encounter the same problem. Accordingly, the trial judge denied Knapp’s request to withdraw.
¶ 58. According to the majority, a violation of due process occurred because the circuit court judge did not recuse sua sponte. Though the majority does not conduct a plain error analysis, it is very well possible that failure to recuse, when called for, could result in plain error, as a defendant has a fundamental right to due process, and due process includes a fair and impartial trial. Jenkins v. State, 570 So.2d 1191, 1193 (Miss.1990). However, that presupposes that the trial judge was required to recuse. After careful consideration, I find absolutely no basis for the position that the judge was required to recuse.
¶ 59. The Mississippi Constitution provides for mandatory disqualification in limited situations. A trial judge is disqualified if the judge is connected to a party by affinity or consanguinity. Miss. Const. art. 6, § 165. Further, a judge is disqualified if he or she has an interest in the outcome of the litigation. Id. Mississippi statutory law reiterates these principles. See Miss. Code Ann. § 9-1-11 (Rev.2002). Here, there is no suggestion that the trial judge was connected to a party or that she had an interest in the outcome of the trial.
¶ 60. As the majority mentioned, a judge should recuse if a reasonable person, knowing all the circumstances, would doubt the judge’s impartiality. Jones v. State, 841 So.2d 115, 135(¶ 60) (Miss.2003). When, as here, a judge is not disqualified pursuant to constitutional or statutory law, the propriety of her sitting is a question for the judge. Id. Reversal is appropriate only in cases of “manifest abuse of discretion.” Id.
¶ 61. The majority finds that the trial judge should have recused herself sua sponte because she could not have remained impartial. According to the majority, once Scott’s lawyer informed the trial judge that Scott confessed to the crime, the judge was precluded from judging the merits of Scott’s motion to suppress. With due respect for the majority, I disagree. At first glance, the majority’s reasoning seems persuasive, but it is essential to consider two features: (1) the trial judge was not the ultimate fact-finder on the issue of guilt and (2) considering that counsel moved to withdraw during a suppression hearing, counsel for Scott did not announce the fact at issue — whether Scott knowingly, intelligently, and voluntarily confessed.
¶ 62. The majority cites three cases as the basis for its opinion. The first case analyzed by the majority is Lowery v. Cardwell, 575 F.2d 727 (9th Cir.1978). The defendant in Lowery was accused of murder. Id. at 728. After the defendant testified, his lawyer moved to withdraw. Id. at 729. The lawyer refused to elaborate as to why he wanted to withdraw. Id. The trial court denied the motion. Id. The relevant issue in Lowery was whether the motion to withdraw, at that time, and under those circumstances, deprived the defendant of a fair trial. The Lowery court found that it did. Id. at 730.
¶ 63. I find that Lowery is clearly distinguishable from the matter presently before us because Lowery involved a bench trial. In Lowery, when the lawyer informed the fact-finder of his belief, he prevented the fact-finder from judging the merits of the case. That announcement deprived the defendant of due process because it was “such an unequivocal announcement to the fact-finder that it deprived the defendant of due process.” Id.
*899 ¶ 64. Scott did not experience a bench trial. A jury was the ultimate finder of fact on the issue of guilt. While the trial judge was the fact-finder incident to Scott’s motion to suppress his confession, Scott’s attorney did not announce the fact at issue. That is, Scott’s attorney did not announce that Scott, in fact, waived his Miranda rights and gave the confession freely and voluntarily that he then sought to suppress. Accordingly, I cannot find that the request to withdraw was “such an unequivocal announcement to the fact-finder that it deprived the defendant of due process.” See Lowery, 575 F.2d at 730.
¶ 65. Obviously, an opinion from the Ninth Circuit Federal Court of Appeals in California is not binding precedent, but it provided some basis of support for the Mississippi Supreme Court’s decision in the second case relied upon by the majority — Ferguson v. State, 507 So.2d 94 (Miss.1987). In Ferguson, the supreme court found that a violation of the Sixth Amendment right to effective assistance of counsel occurred when the defendant’s lawyer called the defendant a liar in open court during a bench trial. Id. at 97. The Ferguson court reversed and remanded the case, not for the trial judge’s failure to recuse, but because the trial judge did not grant a mistrial. Id. at 98. As with Lowery, I find it outcome determinative that Ferguson involved a bench trial. Again, in the matter presently before us, the jury was the ultimate finder of fact.
¶ 66. The final case relied upon by the majority is Butler v. United States, 414 A.2d 844 (D.C.App.1980). In Butler, the trial court conducted a pretrial hearing. During that pretrial hearing, the defendant’s lawyer told the judge, who was to decide the merits of a motion to suppress and conduct a bench trial, that the prosecutor’s case was “open and shut,” and he did not want the defendant to testify because the defendant gave inconsistent statements regarding possession of a murder weapon. Id. at 845. On appeal, the District of Columbia Court of Appeals found that the trial judge should have recused, and the error in failing to do so was “compounded when the judge [sat] as the trier-of-fact.” Id. at 852. Again, this is not binding precedent upon us. Whatever illustrative support Butler offers is distinguishable from this case in that Butler, like Lowery and Ferguson, involved a bench trial.
¶ 67. Additionally, as pointed out in Garrett v. United States, 642 A.2d 1312, 1315 (D.C.1994), the trial judge in Butler “took an active role in convincing the defendant to plead guilty.” As a result of the defense attorney’s statements in Butler, the trial judge reacted by prejudging Butler’s ultimate guilt. Id. The court concluded that in Butler, “the destruction of the appearance of impartiality [was] so prevalent on this record” that “substantial prejudice [was] apparent.” Id. (quoting Butler, 414 A.2d at 853). In this case, there is no “destruction of the appearance of impartiality” that made substantial prejudice apparent. In fact, there is absolutely no specific instance in which it can be said that prejudice — substantial or otherwise — is apparent.
¶ 68. During the hearing on Scott’s motion to suppress, Scott’s lawyer informed the trial judge that he believed Scott intended to commit perjury. That had no bearing on the fact that was at issue at that moment — the admissibility of Scott’s confession. The trial judge was not called upon to determine whether Scott was guilty. The circuit court’s duty at the suppression hearing was to determine the legal admissibility of an alleged incriminating statement given by Scott while in custody in Georgia. The trial judge’s decision was based solely on the sworn testi *900 mony and evidence presented during the actual suppression hearing, not on what Scott’s lawyer may have said during a conference in the judge’s chambers. The trial judge was not required to determine the truthfulness vel non of Scott’s confession — only its admissibility. Further, even if Scott confessed to his own attorney, that has absolutely no relevant bearing on whether Scott’s confession to authorities was knowingly, intelligently, and voluntarily given.
¶ 69. The twelve member jury, who had never heard that Scott confessed to his lawyer, was required to assess the truthfulness of Scott’s confession. Powell v. State, 540 So.2d 13, 16 (Miss.1989). Scott testified that the confession was false, that he did not murder the victim, and that his initials and signature were not on the statement or the waiver forms. During his testimony, Scott admitted that he had been convicted of embezzlement, theft, and use of a stolen ATM card. He also testified that he switched his car’s license plate with one that he had stolen from a car at a mall. Further, he testified that he altered the numbers on his social security card and that he was addicted to gambling. He admitted he lied when he said he was married to Tamika Wray. Bennett testified that Scott swindled him out of the 9mm murder weapon. It is no surprise the jury discounted Scott’s testimony.
¶ 70. I would find that the trial judge could certainly have remained impartial during the proceedings. While the majority finds “no merit in the State’s contention that the trial judge did not show any impartiality in her ruling on factual issues,” the majority does not reference even one decision of the trial judge to exhibit the judge’s partiality. To say that the trial judge would have to be “more than human” to remain unaffected under the circumstances would mean that a trial judge would have to be “more than human” in any bench trial where suppression of a confession was warranted. Similarly, a trial judge would have to be “more than human” in any bench trial where evidence was found to be inadmissible, yet there are no line of cases in which failure to recuse, under those circumstances, amounted to plain error due to a “manifest abuse of discretion.” Surely such a manifest abuse of discretion would accompany even one questionably or identifiably partial decision.
¶ 71. Moreover, I cannot see how granting a new trial will correct the majority’s perceived constitutional defect in this trial. The majority reverses for a new suppression hearing and a new trial to cure what the majority considers to be error. The majority does not discuss just how a newly appointed trial judge would avoid encountering the same problem. From a purely logistic standpoint, when the majority reverses and remands for a suppression hearing and a new trial, the new trial judge will naturally be curious as to why the majority reversed. I believe that, once the majority’s opinion is placed in the public domain, any newly assigned trial judge will suffer the very same basis for disqualification. He or she will certainly read this Court’s opinion to become familiar with the case to discover just why Scott was denied a neutral and detached “fact-finder” justifying a second trial. The newly appointed trial judge certainly would not want to repeat the same error as the first. By doing so, the new trial judge would certainly realize that Scott had previously confessed his guilt to Knapp and would likewise disqualify himself or herself from hearing the new motion to suppress. The problem will simply repeat itself, and Scott will indefinitely evade trial by virtue of the ethical dilemma he created when he gave his attorney reason to believe he would commit perjury. It is no passing concern *901 to believe that subsequent clever criminal defendants with nothing to lose will likewise be able to manipulate the legal system to delay or evade trial.
¶ 72. While I share the majority’s concern that defendants should experience a fair trial, with all due respect, I cannot conclude that the events that transpired were so egregious to amount to plain error of constitutional dimensions. Scott did not experience a bench trial. Counsel did not announce the fact at issue at the time— whether Scott knowingly, intelligently, and voluntarily confessed. Consequently, I dissent.
LEE, P.J., GRIFFIS AND CARLTON, JJ, JOIN THIS OPINION.

. See Miss.Code Ann. § 73-3-37(4) (Rev. 2004) (“It is the duty of attorneys ... [t]o maintain inviolate the confidence and, at every peril to themselves, to preserve the secrets of their clients.”).